TURNER CONSTRUCTION COMPANY

v.

JOHN B. KELLY COMPANY.

Civ. A. No. 73–1988.

United States District Court,
E. D. Pennsylvania.

May 10, 1976.

all property, materials, equipment, machinery and supplies, contractors tools chargeable to the job, owned by the Assured or others and for which the Assured may be liable or assumes liability, to be used in or incidental to the construction.

Section 4, "Extension of Interests Covered" states:

It is specifically understood and agreed that this policy covers both the interest of the Assured and contractor(s) and subcontractor(s) as additional Assureds hereunder, *as their interests may appear.* (emphasis added).

Section 20, "Company's Rights of Recovery" contains the following clause:

the company specifically waives its rights of subrogation against any person, firm or corporation insured hereunder.

Kelly contends that, as a subcontractor it became an additional assured under Section 4 of the policy and as such is a "person, firm or corporation insured hereunder" against whom the insurer has expressly waived a right of subrogation under Section 20 of the policy. Kelly has moved for summary judgment. The motion will be denied.

Richard C. Glazer, Cozen, Begier & O'Connor, Philadelphia, Pa., for plaintiff.

Richard W. Hopkins, White & Williams, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

■ During the construction of Three Girard Plaza, Philadelphia, Pennsylvania, a fire occurred that was allegedly caused by the negligence of a subcontractor, John B. Kelly Company (Kelly). The general contractor, Turner Construction Company (Turner) was paid the full amount of the loss, $107,777 less $5,000 deductible, on its fire insurance policy. The insurance carriers, as subrogees of Turner, filed action in the name of Turner against Kelly. The basis of jurisdiction is diversity of citizenship.[1]

Turner's fire insurance policy under Section 3 "Property Covered" insures:

■ Normally, subrogation is allowed in favor of an insurer who pays a loss suffered by its insured which was occasioned by the negligence of a third party. Subrogation thus arises by operation of law and there is no need for the contract of insurance to contain an express stipulation as to subrogation. *Roberts v. Fireman's Ins. Co.,* 376 Pa. 99, 101 A.2d 747 (1953); *Fidelity Title and Trust Co. v. People's Natural Gas Co.,* 150 Pa. 8, 24 A. 339 (1892).

■ Subrogation, however, has been held not to lie against an insured. "No rights of subrogation can arise in favor of the insurer

---

1. *United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), held that as a matter of federal procedural law if "the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name." *Id.* at 380–381, 70 S.Ct. at 215. However, where, as in this case, a "loan receipt" is utilized, the insured retains a sufficient interest to sue in its name. *White Hall Bldg. Corp. v. Profexray Div. of Litton Industries, Inc.,* 387 F.Supp. 1202 (E.D.Pa.1974) (Newcomer, J.). Neither party has raised any issue as to the "real party in interest."

against its own insured, since by definition subrogation arises only with respect to the rights of the insured against third persons to whom the insurer owes no duty." 16 Couch on Insurance § 61:133 (2d ed. 1966). *See, e.g., Graham v. Rockman,* 504 P.2d 1351, 1356 (Alaska 1972); *Home Ins. Co. v. Pinski Bros., Inc.,* 160 Mont. 219, 500 P.2d 945, 949 (1972). Although research has failed to locate any appellate court of Pennsylvania squarely deciding this question, lower court cases are in accord. *See Allegheny College v. Crump, Inc.,* 21 D. & C.2d 207 (1959); *Hartford Mutual Ins. Co. v. McNally,* 82 York Legal Record 110 (1968).

Defendant Kelly is not specifically named as an insured or as a co-insured. Kelly claims coverage under Section 4 of the policy insuring subcontractors as additional assureds "as their interests may appear." Turner disputes this interpretation on two grounds: (1) Kelly suffered no insurable loss as a result of the fire, therefore, it had no insurable interest and could not be an insured; (2) the insurance contract between the insurers and Turner covered actual damage to the property of the subcontractors and did not purport to insure their legal liability to others.

Kelly cites a line of cases, all stemming from two Louisiana decisions, which view the partial insuring of a party as immunizing it from a later subrogation action brought by the insurer. In *Glens Falls Ins. Co. v. Globe Indemnity Co.,* 214 La. 467, 38 So.2d 139 (1948), the insurer issued a policy to Brewster Co., and/or Treadwell. Treadwell was the *general* contractor on a building owned by Brewster. A fire destroyed the building before it was completed and the insurer paid Brewster's claim. The court refused to allow the insurer to sue Treadwell for negligence as Treadwell was a named co-insured. The court pointed out that Treadwell (unlike Kelly's position in the present case) had a property interest in the entire building. Treadwell was specifically a named insured.

■ This case was followed a few months later by *Louisiana Fire Ins. Co. v. Royal Indemnity Co.,* 38 So.2d 807 (La.App.1949).

Plaintiff was an insurer which had paid a claim of $1,963.52 to a general contractor on a Builder's Risk policy. The policy provided coverage for items of labor, materials, equipment, supplies and forms to be used in the construction of the building. The general contractor then paid defendant Beckett, a subcontractor, on his claim of $175 for damaged property. When the insurer attempted to sue Beckett for its negligence in causing the fire, the court found *Glens Falls* to be controlling. The court reasoned that by paying Beckett the $175.00, the insurer recognized that Beckett was a co-insured and thus all subrogation was precluded. Turner attempts to distinguish this case on the basis that Beckett had suffered a property loss for which he had been paid, while Kelly suffered no loss whatsoever. This distinction I do not consider to be controlling. Such a decision should not turn on whether Kelly suffered any particular dollar amount of property damage in the fire, but rather, on the extent of the policy coverage.

■ Louisiana does not distinguish between property and liability coverage in its determination of the existence of a co-insured status. In the recent case of *State Farm Fire and Casualty Co. v. Sentry Indemnity Co.,* 316 So.2d 185 (La.App.1975), the fire insurance policy insured a church building and provided for church employees to recover up to $500 for personal property damage caused by fire. A fire was allegedly caused by the negligence of the minister's wife and the minister was named as vicariously liable. The court dismissed the claim against the minister because the $500 personal effects coverage was deemed to have elevated him to the status of a co-insured. He, therefore, was not amenable to suit on the insurer's $25,000 subrogation claim.

The reasoning of these Louisiana decisions has been adopted in *Transamerica Ins. Co. v. Gage Plumbing & Heating Co.,* 433 F.2d 1051 (10th Cir. 1970) and *New Amsterdam Casualty Co. v. Homans-Kohler, Inc.,* 305 F.Supp. 1017, 1020 (D.R.I.1969). Other courts, however, have rejected the rationale

upon which the Louisiana cases were based. *Public Service Co. of Oklahoma v. Black and Veatch, Consulting Engineers,* 328 F.Supp. 14 (N.D.Okl.1971); *Baltimore Contractors, Inc. v. Circle Floor Co. of Wash., Inc.,* 318 F.Supp. 106 (D.Md.1970); *Employers' Fire Ins. Co. v. Behunin,* 275 F.Supp. 399 (D.Colo.1967); *Paul Tishman Co. v. Carney & Del Guidice, Inc.,* 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971), *aff'd,* 34 N.Y.2d 941, 359 N.Y.S.2d 561, 316 N.E.2d 875 (1974); *McBroome-Bennett Plumbing, Inc. v. Villa-France, Inc.,* 515 S.W.2d 32 (Tex.Civ.App. 1974).[2] I find the cases rejecting the "Louisiana Rule" more accurately reflect the intent of the parties to the insurance contract entered into between the insurers and Turner Construction Company.

The cases rejecting the "Louisiana Rule" draw a clear distinction between a subcontractor who is insured against property damage alone as opposed to a subcontractor who is additionally protected for his legal liability. In *Tishman, supra,* the court found the policies "included as assured the defendant as well as other subcontractors." The policies, however, insured only the structure for loss by fire or other included risk. "These policies did not insure the assureds against liability to others." 320 N.Y.S.2d at 397.

■ A Texas court, in a lengthy opinion, undertook to analyze carefully a factual situation similar to the instant case. In *McBroome-Bennett Plumbing, Inc. v. Villa-France, Inc., supra,* the insurer instituted suit in the name of Villa-France, a general contractor, to recover for the negligence of the subcontractor. The subcontractor defended on the ground that it was a co-insured under the insurance contract between Villa-France and the insurer. Of the total damage of $15,719 caused by the fire, the subcontractor received $545 for loss to his property. In determining the equities of the situation, the court reasoned that in the absence of insurance, Villa-France could have sued the negligent subcontractor for

the full loss sustained. Additionally, Villa-France paid all the insurance premiums and the subcontractor was not a direct party to the insurance contract. In such circumstances the court concluded that no automatic "co-insured status" was created. In upholding the insurer's right of subrogation, the court found that the subcontractor was covered under the insurance policy only to the

> extent of *Villa France's liability* for them. However, the negligence of the subcontractor *to the property of others* is not covered as the policy stated it covered (1) the property of the assured and (2) the property for which the assured is liable. Clearly Villa France is not liable for the subcontractor's negligence to Villa France. Id. at 38. (emphasis in original)

This same reasoning is fully applicable to this case. The insurance policy contains similar language to that in *Villa-France.* The subcontractor's interest in the insurance contract is limited by the phrase "as their interests may appear." *Clarke & Cohen v. Hartman & Co.,* 105 Pa.Super. 118, 159 A. 460 (1932). The purpose is to give the subcontractor an interest in the building according to the amount of the subcontractor's work and material already utilized. The clause was not inserted to make Kelly a co-insured for all purposes.

The above analysis is fully consistent with the intent of the parties as expressed in the contract. Kelly procured its own liability insurance policy pursuant to the requirements of Article XXIII of the Turner-Kelly contract. Article XXIII states that the "Subcontractor shall procure and maintain, at its own expense . . . the following insurance . . . (2) CONTRACTORS PUBLIC LIABILITY INSURANCE." This added fact distinguishes the present case from *Transamerica v. Gage, supra,* where the subcontractor relied for insurance coverage solely upon the Builder's Risk policy procured by the general contractor and carried no insurance of its own.

---

**2.** The court in *McBroome-Bennett* observed that the Louisiana decisions were "based admittedly upon certain customs and practices of the building trade in Louisiana and upon the civil law of that state." *Id.* at 40.

The parties did not intend Kelly to be insured for its legal liability under the insurance contract entered into between Turner and the insurers, nor to be relieved of liability to Turner for negligence. *See Baltimore Contractors, Inc. v. Circle Floor Co., supra* at 110.[3]

■ What is the effect of the express waiver of subrogation against "any person, firm or corporation insured hereunder"? As discussed above, Kelly was an insured for purposes of its property interests protection alone. Any payment it received to compensate it for fire damage to its property, even if caused by its own negligence, could not later be recovered by the insurer. Thus, for example, if the insurer paid a total of $100,000 to Turner, of which Kelly was to receive $10,000 for losses it sustained, Kelly's maximum liability on the subsequent subrogation suit would be $90,-000.00. *See Public Service Co. v. Black and Veatch, supra* at 17. The importance of determining the amount of the loss, if any, suffered by the subcontractor is not for the purpose of determining its status as a co-insured but instead to determine the potential maximum dollar liability of the allegedly negligent subcontractor. The waiver clause does not extend, however, to relieving a subcontractor for its negligence in causing damage to property owned by the general contractor. For liability purposes, Kelly was not an "insured hereunder."

■ Thus, if Kelly negligently caused a fire damage loss to Turner, Turner may recover against Kelly, and Turner's insurance carrier has the right to proceed against Kelly as the subrogee of Turner.

---

**3.** Indeed, it does not appear that the policy between Turner and the insurers even covered Turner's legal liability. At oral argument counsel for Turner stated that Turner had a separate policy with the insurer for liability protection.