BAUGH–BELARDE CONSTRUCTION COMPANY, Appellant,

v.

COLLEGE UTILITIES CORPORATION, Appellee.

No. 2532.

Supreme Court of Alaska.

April 1, 1977.

Robert J. Dickson, Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellant.

Millard F. Ingraham, Rice, Hoppner & Hedland, Fairbanks, for College Utilities.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for Fiberchem, Inc.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

BURKE, Justice.

This is a case of first impression in Alaska, involving the subrogation rights of a builder's risk insurer against a negligent subcontractor of the named insured.

On December 29, 1970, Baugh-Belarde Construction Company entered into a contract to build faculty housing for the University of Alaska. Baugh-Belarde then engaged College Utilities Corporation to perform subcontract functions necessary to the construction of the modular housing project, commonly known as the Yak Estates. Underwriters at Lloyds of London, through Pitts and Associates Insurance Brokers, issued a builder's all risk insurance policy to Baugh-Belarde. This policy was later extended by endorsement to cover the Yak Estates construction job and the subcontractors on that site, to the extent of their interest in the project.[1]

During the course of construction, a fire occurred, allegedly due to College Utilities'

---

1. The insuring clause of the builder's all risk policy provided:

This Insurance, subject to the limitations, exclusions, terms and conditions hereinafter mentioned, is to insure, in respect of occurrences happening during the period of this Insurance, against All Risks of Physical Loss of or Damage to: [description of property.]

Other relevant portions of the policy included:

CONDITIONS

1) SUBCONTRACTORS

In respect of operations performed by subcontractors for the Assured, such subcontractors may, at the request of the Assured, be included in the name of the Assured *but only as regards property of the aforesaid*

negligence, for which the repair costs were $230,894.46. The builder's all risk policy covered $218,562.07 of the repair costs, and that amount was paid to Baugh-Belarde by Lloyds.

College Utilities subsequently sought recovery against Baugh-Belarde for amounts it claimed were due under the contract. Baugh-Belarde counterclaimed for $230,894.46, the exact amount of loss caused by the fire, alleging that College Utilities had breached its contract and that College Utilities' negligence had caused the fire. Although these counterclaims were brought by Baugh-Belarde in name, it is admitted that they are brought on behalf of the insurer to the extent of the policy coverage.

■ College Utilities moved for partial summary judgment, seeking dismissal of the counterclaims to the extent of the $218,562.07 paid by Lloyds, arguing that it was a co-insured under the builder's risk policy and, as such, could not be sued by its own insurer in a subrogated action. The trial court, Van Hoomissen, J., granted College Utilities' motion, and it is from this decision that Baugh-Belarde appeals.

In *Graham v. Rockman*, 504 P.2d 1351 (Alaska 1972), we held that in subrogated actions, an insurer may not recover its losses from a negligent third party if that party is an additional insured under the applicable policy. Although we remanded that case to the trial court for further findings as to the negligent party's status under the policy, we stated unequivocally that "an insurer cannot recover by means of subrogation against its own insured." [2] College Utilities' status as an additional insured under the builder's risk policy is undisputed in the case before us now; [3] however the policy language, limiting the subcontractors' coverage to their own property, prevents an automatic application of the *Rockman* rule to this situation. The issue raised by Baugh-Belarde in this appeal is whether College Utilities' immunity from liability in a subrogation action is limited to the amount of loss to its own property in the construction project.

The language of the builder's risk policy in this case provided that subcontractors were insured "only as regards [their] property," and were included "as their interests may appear." This type of limiting language, however, has not stopped other courts from viewing subcontractors as insureds in order to prevent them from being liable in subrogation claims for property not their own. In *New Amsterdam Casualty Co. v. Homans-Kohler, Inc.*, 305 F.Supp. 1017 (D.R.I.1969), subcontractors allegedly caused a fire on a construction site through their negligence, and the insurance company, as subrogee to the owner's claim, at-

---

*subcontractors* the value of which shall have been included in the Contract Price shown in the Schedule. (emphasis added)

At the request of Baugh-Belarde, an endorsement extended coverage to the subcontractors on the job:

Endorsement # 1
*Additional Assured Endorsement*
It is understood and agreed that this insurance is extended to include:

\* \* \* \* \* \*

7. Subcontractors and/or assignees, as their interests may appear providing that the cost of work done by them is INCLUDED in the *MONTHLY DECLARATIONS OF THE CONTRACT* (original emphasis)

2. 504 P.2d at 1356. *See also* 16 Couch on Insurance § 61.133.

3. In its brief, appellant argued in the alternative that College Utilities was not even insured to the extent of its own property under the

builder's risk policy. It based this contention on the theory that by agreeing to procure fire insurance for the portion of the project covered by its subcontract and failing to do so, College Utilities assumed the role of Baugh-Belarde's insurer against fire. Appellant apparently abandoned this contention at oral argument when it conceded:

[A]dmittedly in this case, the language clearly states that . . . the subcontractor is only covered to the extent of its work in the project; that's unambiguously stated in the insuring clause. And we are not seeking subrogation for any amounts . . . for which College Utilities was insured, to the extent that it had any interest in that property. . . .

Furthermore, the record does not indicate that Baugh-Belarde ever requested College Utilities to procure fire insurance for its own property in the project.

tempted to recover amounts paid out for the fire loss. As in the present case, the subcontractors were specifically covered under the builder's risk policy "as their interests may appear." However, the *New Amsterdam* court was not willing to rely on that phrase to distinguish between the insured status of the owner and that of the subcontractors. The court viewed the policy as providing single coverage for all of its insured and barred the subrogation suit by the insurer against the subcontractors.

> By accepting the premiums for [the subcontractors'] inclusion as co-insureds under said policy, the plaintiff insurance company assumed the risk of *any* loss occasioned by their negligence. (emphasis added).[4]

This result was also adopted by the courts in *Transamerica Insurance Co. v. Gage Plumbing & Heating Co.*, 433 F.2d 1051 (10th Cir. 1970) and *United States Fire Insurance Co. v. Beach*, 275 So.2d 473 (La. App.1973).[5] Although some other courts have reached the contrary conclusion that the insurance benefits under a builder's risk policy are extended to a subcontractor only for damage done to his property and that the subcontractor's immunity from liability is accordingly limited,[6] we agree with the single coverage approach of the *New Amsterdam* court. The builder's risk policy obtained by Baugh-Belarde protected each insured party against his own negligence, whether the property lost belonged to him or to some other insured party. Thus, the fact that College Utilities had a limited property interest in the Yak Estates project does not prevent it from being immune to suit by its insurer.

■ We base our decision on several policy considerations. First, a severe conflict

of interest would exist if an insurer were permitted to recover from one of its own insureds. As an insured, College Utilities was under an implied duty to cooperate fully with its insurer in its inspection of any loss covered under the policy. As part of this duty of cooperation, College Utilities was obligated to answer the questions of insurance agents concerning the facts surrounding any loss and to permit inspection of its property and equipment on the site. If the insurer were permitted to subrogate to Baugh-Belarde's claims against College Utilities, it could use College Utilities' cooperation in the investigation of the loss to build a liability case against the insured subcontractor. Such a conflict of interest would result in a breach of the fiduciary relationship between the insurer and its insured. This danger of conflict of interest was recognized by the court in *Home Insurance Co. v. Pinski Brothers, Inc.*, 160 Mont. 219, 225–226, 500 P.2d 945, 949 (1972) in its enumeration of reasons why insurers should not be permitted to sue their own insureds:

> To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) *permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured*; (4) allow the insurer to take advantage of its conduct and conflict of

---

**4.** 305 F.Supp. at 1020.

**5.** In both the *Gage* and *Beach* cases the subcontractors' status as insured was inferred from the policy's general coverage of their property on or around the construction site; yet, this apparent limitation of coverage to their property did not change either court's view of the builder's risk policy as a single policy, protecting all insureds from loss to the entire property.

**6.** See *Public Service Co. of Oklahoma v. Black & Veatch Consul. Engr.*, 328 F.Supp. 14 (D.Okl. 1971); *Paul Tishman Co. v. Carney & Del Guidice, Inc.*, 36 A.D.2d 273, 320 N.Y.S.2d 396 (App. Div.1971) aff'd per curiam 34 N.Y.2d 941, 359 N.Y.S.2d 561, 316 N.E.2d 875 (N.Y.1974); *Employers' Fire Insurance Co. v. Behunin*, 275 F.Supp. 399 (D.Colo.1967); *McBroome-Bennett Plumbing & Heating v. Villa France, Inc.*, 515 S.W.2d 32 (Tex.Civ.App.1974).

interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured. (emphasis added)

A second policy reason for not permitting a builder's risk insurer to subrogate against its insured, regardless of the extent of the insured's property in the construction project, is reduction of litigation. If an insurer on a major construction job were able to recover from one or more of its insureds, most losses on construction jobs would result in costly litigation. This result is clearly not in the public interest, especially since the cost of such litigation would ultimately be passed on to the general public in the form of increased insurance premiums and higher construction costs.

Our third policy consideration concerns the tremendous burden which would be placed on subcontractors in College Utilities' position if a builder's risk insurer were permitted to recover against its own insured. Each subcontractor working on a multi-million dollar project would be forced to protect against liability for loss to the entire project by paying huge premiums for his own liability insurance. Again, these higher premiums would be calculated into the subcontractors' bids and would increase the entire cost of the construction project.

■ All three of these policy problems can be avoided by viewing the builder's risk policy as a single policy which protects each insured party against his own negligence. The entire loss should be borne by the insurer which has accepted one premium covering the entire property.[7]

■ Baugh-Belarde raises two related issues which can be treated briefly. First, it argues that regardless of the limitations of the subcontractors' coverage under the builder's risk policy, the policy is not a "liability" policy and thus does not insure the subcontractor against liability for losses caused through negligence. However, it is well established that where negligence causes a loss, that loss is considered to be fortuitous and within the coverage of an all risks policy, unless the policy specifically excludes it from coverage.[8] Furthermore, the policy in the instant case contained a list of causes of physical loss which were specifically excluded from coverage, and negligence was not among them. In fact, the list of what "this policy does not cover" included:

> cost of making good faulty or defective workmanship, material, construction or design, *but this exclusion shall not apply to damage resulting from such faulty, or defective workmanship, material, construction or design.* (emphasis added)

If the policy expressly covered damage resulting from faulty workmanship, it clearly did not exclude losses arising from a subcontractor's negligence, as appellant contends.

■ Appellant also argues that it has a contract claim against College Utilities and that its insurer is entitled to be subrogated to that claim, even if College Utilities is immune from liability for negligence. The substance of that claim is that College Utilities breached a provision of its subcontract to:

> indemnify and save harmless the contractor from any and all . . . damages of whatsoever kind or nature . . . arising out of, in connection with, or incident to the subcontractor's performance of the subcontract.

Baugh-Belarde argues that in failing to indemnify it for the loss caused by the fire, College Utilities breached this provision and further contends that this "breach of con-

---

7. This interpretation is also in conformity with the principle that where a clause in an insurance policy is ambiguous, we will construe the clause liberally in favor of the insured. *See United States Fire Insurance Co. v. Schnabel,* 504 P.2d 847, 851, n. 13 (Alaska 1972).

8. *C. H. Leavell & Co. v. Fireman's Fund Insurance Co.,* 372 F.2d 784 (9th Cir. 1967); *General*

*American Transp. Corp. v. Sun Insurance Office, Ltd.,* 239 F.Supp. 844 (E.D.Tennessee 1965); *Associated Engineers, Inc. v. American National Fire Ins. Co.,* 175 F.Supp. 352 (D.C. Cal.1959); *Fed. Ins. Co. v. Tamiami Trial Tours,* 117 F.2d 794 (5th Cir. 1941); *Redna Marine Corporation v. Poland,* 46 F.R.D. 81 (S.D. New York 1969).

tract" claim is entirely separate from the negligence theory of recovery. This latter proposition is doubtful, since in order to prove a breach of the indemnification agreement, Baugh-Belarde will first have to prove that the losses arose from performance of the subcontract; thus, proof of College Utilities' negligence appears necessary to trigger the contract theory. However, even if the breach of contract allegation constitutes a separate theory of recovery, Baugh-Belarde has cited no authority in support of its proposition that an insurer is entitled to be subrogated to a contract claim against its own insured. Certainly the *Pinski* roster of equitable reasons for preventing an insurer from suing its own insured is as applicable to a breach of contract claim as to a tort claim.

Thus, we conclude that the trial court was correct in granting College Utilities' motion for summary judgment and ruling that the insurer could not recover through subrogation from a subcontractor which was insured under its builder's risk policy.[9] The trial court's decision is

AFFIRMED.

---

**9.** As College Utilities admits in its brief, any losses for which College Utilities may be legally liable over and above the policy of insurance constitute recoverable damages by Baugh-Belarde.