523 So.2d 756 (1988)
DYSON & COMPANY and St. Paul Fire & Marine Insurance Co., Appellants,
v.
FLOOD ENGINEERS, ARCHITECTS, PLANNERS, INC., Appellee.
FLOOD ENGINEERS, ARCHITECTS, PLANNERS, INC., Appellant,
v.
AIR PRODUCTS & CHEMICALS, Appellee.
Nos. BR-102, BR-221.
District Court of Appeal of Florida, First District.
April 15, 1988.
*757 Edward P. Nickinson, III, and Linda L. Nobles, of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, Pensacola, for Dyson & Co. and St. Paul Fire & Marine Ins. Co.
Thomas J. Guilday and Mark E. Holcomb, of Huey, Guilday, Kuersteiner & Tucker, Tallahassee, for Flood Engineers, Architects, Planners, Inc.
Robert P. Gaines, of Beggs & Lane, Pensacola, for Air Products & Chemicals, Inc.
ZEHMER, Judge.
These are consolidated appeals arising out of an action on a builders' risk insurance policy. In case BR-102, Dyson & Company and St. Paul Fire and Marine Insurance Company appeal a summary judgment entered in favor of Flood Engineers, Architects, Planners, Inc., based on a ruling that Flood Engineers had an insurable interest in the sewage treatment plant under construction. In case BR-221, Flood Engineers appeals a summary judgment entered in favor of the third party defendant Air Products and Chemicals, Inc.
In 1976, the City of Pensacola contracted with Flood Engineers to design and engineer the specifications for construction of the Main Street Sewage Treatment Plant. Dyson, a qualified general contractor, submitted the low bid for construction of the project and was awarded the contract on July 14, 1976. Under paragraph 43.4 of the General Conditions of Dyson's contract, Dyson was required to maintain builders' risk insurance on the project which would protect the interests of Dyson, the City, and Flood Engineers from various hazards to the work. In purported compliance with paragraph 43.4, Dyson obtained builders' risk insurance through St. Paul, but the policy named only Dyson and its subcontractors as insureds, apparently leaving the interests of Flood Engineers and the City unprotected.
On June 2, 1981, a fire occurred at the plant during a performance test of certain portions of the completed project. The fire originated in the ozone destruct units which were manufactured and supplied by Air Products. Dyson was paid $231,956.66 pursuant to the builders' risk insurance policy issued by St. Paul for damages caused by the fire.
Dyson and St. Paul filed an action for declaratory judgment against Flood Engineers, the City, and the Escambia County Utilities Authority (Authority) to determine the rights and duties of the parties with respect to the fire. Dyson and St. Paul subsequently entered into a settlement agreement with the City and Authority, resulting in the dismissal of the claims against both of them. Dyson and St. Paul then filed an amended complaint against Flood Engineers, alleging negligent design and seeking to recover from Flood Engineers the monies which St. Paul had paid to Dyson under the builders' risk policy. Flood Engineers filed a third-party complaint against Air Products seeking contribution and indemnity, alleging that Air Products was negligent in manufacturing, installing, and testing the ozone destruct units which caused the fire.
Flood Engineers moved for summary judgment against Dyson and St. Paul on the grounds that Dyson's breach of its obligation to insure Flood Engineers' interests barred any action by Dyson and St. Paul to recover benefits paid under the builders' risk policy for fire loss. Dyson and St. Paul countered that Flood Engineers could not be an insured under the policy because it had no insurable interest in the covered property. On November 21, 1986, the trial court granted Flood Engineers' motion for summary judgment in the claim against Dyson and St. Paul. This final order is the subject of appeal in case BR-102.
Air Products moved for summary judgment against Flood Engineers on the *758 ground that no common liability existed between it and Flood Engineers to Dyson and St. Paul. The trial court granted Air Product's motion on December 10, 1986. This final order is the subject of the appeal in case BR-221. Flood Engineers concedes that if the court affirms the summary judgment on appeal in case BR-102, then it need not reach the appeal in case BR-221.
In its action against Flood Engineers, case BR-102, Dyson contends that the trial court erred in finding that Flood Engineers had an insurable interest in the plant. Specifically, Dyson argues that the term "insurable interest" in the context of builders' risk policies concerns only property interests and the people who were exposed to the risk of property loss during construction. Dyson argues that Flood Engineers' only interest is that of being held free from liability for damages caused by its negligence, and that this interest is the type of insurable interest under a policy for liability insurance but is not an interest insurable under a policy of property insurance such as this builders' risk policy.
Paragraph 43.4 of the contract between the City and Dyson for construction of the sewage treatment plant specifically states that:
The Contractor shall also take out and maintain at his expense during the life of this Contract, Builders' Risk Insurance satisfactory to the Owner which shall protect the Contractor, the Owner, and the Engineer as their interests may appear, for the following hazards to work... .
(R. 226) (emphasis supplied). The parties concede that Dyson failed to include Flood Engineers in the insurance policy and that the builders' risk policy obtained through St. Paul insured only Dyson and its subcontractors.
A similar issue arose in Smith v. Ryan, 142 So.2d 139 (Fla. 2d DCA 1962), where the contract required the owner to carry a fire insurance policy naming the contractor as one of the insureds in contemplation of shifting any risk of damage by fire from the parties to the contract to an insurer irrespective of the parties' negligence. The court held that the failure of the owner to fulfill the duty of obtaining insurance coverage to protect the contractor's interest precluded recovery by the owner, for the benefit of the insurer, from the contractor to indemnify the insurer for a covered loss. See also U.S. Fire Insurance Co. v. Norlin Industries, Inc., 428 So.2d 325 (Fla. 1st DCA 1983).
In this case, if Flood Engineers had been an insured under the builders' risk policy as required by the contract, Dyson and St. Paul would have been precluded from maintaining a subrogation suit against Flood Engineers so long as Flood Engineers had an insurable interest in the project. Smith v. Ryan, 142 So.2d 139 (insurer does not generally have the right to maintain a subrogation suit against its own insured); DeCespedes v. Prudence Mutual Casualty Co., 193 So.2d 224 (Fla. 3d DCA 1966), aff'd, 202 So.2d 561 (Fla. 1967) (insurer is subrogated to only such rights as the insured possessed). We conclude that Flood Engineers had an insurable interest which could be protected under the builders' risk policy.
Section 627.405(2), Florida Statutes (1985), states:
"Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
The trial court found that Flood Engineers had an insurable interest in the work which satisfied this statutory definition, namely, that Flood Engineers' property and liability interests in the project were "insurable interests" which should have been insured.
We note that, in general, a builders' risk insurer may not recover from a coinsured for damages caused to property covered under the policy. See Harvey's Wagon Wheel, Inc. v. MacSween, 96 Nev. 215, 606 P.2d 1095 (1980); South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc., 182 Ind. App. 350, 395 N.E.2d 320 (1979). We have found no Florida cases dealing with the specific issue presented here and an examination of cases from *759 other jurisdictions reveals there is a split of authority on whether the term "as their interests may appear" in builders' risk policies includes liability interests as well as property interests.
The minority view holds that a builders' risk policy is property insurance, not liability insurance. For example, in Turner Construction Co. v. John B. Kelly Co., 442 F. Supp. 551 (E.D. Pa. 1976), the Pennsylvania court rejected the view adopted in other jurisdictions and held that the term "as their interests may appear" in a builders' risk policy did not insure a subcontractor for its legal liability nor relieve the subcontractor of liability to the general contractor for its negligence. 442 F. Supp. 551, 553-54. Similarly, in Paul Tishman Co. v. Carney & Del Guidice, Inc., 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971), aff'd 34 N.Y.2d 941, 359 N.Y.S.2d 561, 316 N.E.2d 875 (1974), the New York court held that a builders' risk policy insured only the structure for loss by fire or other included risk. "These policies did not insure the assureds against liability to others." 320 N.Y.S.2d at 397. See also Employers' Fire Insurance Co. v. Behunin, 275 F. Supp. 399 (D.Colo. 1967); Public Service Co. of Okla. v. Black & Veatch Consulting Eng'rs, 328 F. Supp. 14 (N.D. Okla. 1971).
On the other hand, the majority view supports Flood Engineers' contention that the phrase "as their interests may appear" in builders' risk policies includes liability as well as property interests. In Baugh-Belarde Construction Co. v. College Utilities Corp., 561 P.2d 1211 (Alaska 1977), the Supreme Court of Alaska held that a subcontractor's immunity from liability to the insurer was not limited to the amount of damages to the subcontractor's own property. Rather, the builders' risk policy was held to include losses caused by negligence of any insured, and that the insurer could not shift those losses to an insured. 561 P.2d 1213-14. The court based its decision on several policy considerations including (1) the severe conflict of interest that would exist if an insurer were permitted to recover from one of its own insured; (2) the reduction of litigation; and (3) the tremendous burden that would be placed on subcontractors if a builders' risk insurer were permitted to recover against its own insured. 561 P.2d at 1214-15. Accord Board of Education v. Hales, 566 P.2d 1246 (Utah 1977); Harvey's Wagon Wheel, Inc., 606 P.2d 1095; South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc., 395 N.E.2d 320.
We conclude that the better policy is expressed by the majority view. We hold that where the potential risk to be insured under a builders' risk policy is one of liability for damages to the construction project, such risk will constitute an "insurable interest" under section 627.405(2). In this case, it is clear from the contract provisions that the builders' risk policy was to protect Flood Engineers as well as the owner "as their interests may appear". Although Flood Engineers could not point to any tangible property interest it had in the project such as bricks, mortar, and other equipment, it had a substantial interest in being held free from any liability arising out of its participation in the project. Flood Engineers had an insurable interest to the extent it might become legally responsible for fire loss to the property as a result of its own negligence. Thus, Flood Engineers had a sufficient insurable interest to support its right to enforce compliance with the builders' risk coverage provision of the contract. Entry of summary judgment for appellee Flood was in accord with the law and free of error.
As Flood Engineers is not liable to Dyson as a matter of law and thus has no right to indemnity or contribution from Air Products, we need not reach the issues raised by Flood Engineers in case BR-221.
The appealed order in case BR-102 is AFFIRMED, and case BR-221 is DISMISSED as moot.
SHIVERS and THOMPSON, JJ., concur.