**GENERAL ELECTRIC COMPANY,**
**Plaintiff,**

v.

**ZURICH–AMERICAN INSURANCE COMPANY, Defendant.**

Civ. No. 95–0018–B.

United States District Court,
D. Maine.

Sept. 27, 1996.

Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Plaintiff.

Steven L. Smith, Cozen & O'Connor, Philadelphia, PA, Phillip D. Buckley, Rudman & Winchell, Bangor, ME, for Defendant.

· ORDER AND MEMORANDUM
OF DECISION

BRODY, District Judge.

This is a case of first impression in the First Circuit. The question presented is whether a named insured under a builder's risk insurance policy has an insurable interest in its potential liability for damages as well as in its tangible property interests. The Court concludes that it does.

Plaintiff, General Electric Company (GE), filed a declaratory judgment action with the Court on January 11, 1995, asking the Court to declare its rights as against Defendant, Zurich–American Insurance Company (Zurich), regarding Zurich's intent to pursue a subrogation claim against GE. Zurich thereafter filed a Motion for Summary Judgment on January 2, 1996. GE replied to Zurich's Motion and filed a Cross–Motion for Summary Judgment on May 28, 1996.

No genuine issues of material fact exist in GE's request for declaratory judgment. Because the Court now rules that a builder's risk insurance policy protects an insured against his own negligence, Zurich's Motion for Summary Judgment is denied and GE's Cross–Motion for Summary Judgment is granted.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the record in the light most favorable to the nonmoving party. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

In 1990, Alternative Energy, Incorporated (AEI) began to develop wood-fired electric generating plants and to enter into contracts to sell the power to Central Maine Power. GE supplied AEI with four steam turbines for these plants pursuant to a contract GE and AEI executed on December 4, 1990 (the Turbine Contract). Following the Turbine Contract, AEI entered into separate contracts with National Energy Production Corporation (NEPCO) for the design and construction of each plant. General Electric Capital Corporation, not a party to this action, provided AEI with financing. In all, AEI developed three plants: The first was located in Livermore Falls, Maine; the second in Cadillac, Michigan; and the third in Ashland, Maine.

AEI secured insurance for each of these projects under a builder's risk insurance policy with Zurich (the Policy). The insuring clauses, identical for each project, state in pertinent part:

This Policy, subject to the limitations, exclusions, terms and conditions hereinafter mentioned, is to insure ... against All Risks of Physical Loss of or Damage to:

a) Property in course of construction ... whilst at the risk of the Assured....

GE was included as a named insured in Endorsement No. 2 to the Policy, although the record is unclear as to whether this occurred by mistake or design.

On May 24, 1993, there was a fire at AEI's construction site in Ashland, Maine (the Ashland project), allegedly caused by GE's negligent installation of a steam turbine. The damages resulting from the fire totaled $2,488,110.24. Zurich paid AEI's claim and subsequently notified GE of its intent to pursue a subrogation claim against GE based on negligence, breach of contract, breach of warranty, and strict liability.

In its request for declaratory judgment and Cross–Motion for Summary Judgment, GE argues that Zurich may not subrogate against it for two reasons: (1) GE was a named insured in the Policy and possessed an insurable interest in the property at the Ashland project, and Maine law holds that an insurer may not subrogate against one of its insureds, and (2) even if GE did not have an insurable interest, Zurich may not subrogate against GE because AEI waived all rights to damages against GE in a construction contract AEI executed with NEPCO regarding the Ashland project. Because the Court holds that GE did have an insurable interest in the Ashland project, it will not address GE's second argument.

## III. INSURABLE INTEREST

■ Insurance companies may not subrogate against their own insureds. *Willis Realty Assocs. v. Cimino Constr. Co.*, 623 A.2d 1287 (Me.1993). Thus, if GE were still an insured under the Policy at the time of the fire, Zurich would be precluded from pursuing a subrogation claim against it. Zurich

argues that although GE was a named insured under the Policy, GE no longer held an insurable interest at the Ashland project and therefore may be required to pay damages. Zurich cites the language of the Policy, which states that "the insureds are protected from risk of fire to [p]roperty ... whilst at the risk of the Assured." Zurich reads this language as limiting GE's insurable interest solely to whatever tangible, physical property for which GE still bore a risk of loss at the time of the fire. If GE could not point to any such property, Zurich argues, then GE did not have an insurable interest and may be subject to a subrogation claim. The only tangible property that GE delivered to AEI's construction sites were turbines pursuant to the Turbine Contract. Because the Turbine Contract states that GE bore the risk of loss to the turbines only until GE delivered them to the construction sites, and because GE had in fact already delivered a turbine to the Ashland project before the fire, Zurich contends that there was no property at the site of the fire for which GE was at risk. Zurich concludes that GE no longer had an insurable interest, despite the fact that, for whatever the reason, GE's name still appeared on the endorsement to the Policy, and may properly be subrogated against.

GE argues that even if it cannot point to any tangible property interest it had at the Ashland project, builder's risk insurance policies include immunity from liability for damages as well as damages to the insured's own property. GE argues that under the facts of this case, it had an insurable interest in its own potential negligence and subsequently is released from any possible subrogation claim Zurich may have.

■ There is case law to support both parties' interpretations of the builder's risk insurance policy at issue here. Some courts have adopted Zurich's view that a builder's risk insurance policy only covers property in which a named insured has an insurable interest, and does not insure a named insured for its potential legal liability to a general contractor. *See Turner Constr. Co. v. John B. Kelly Co.*, 442 F.Supp. 551 (E.D.Pa.1976); *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32 (Tex.Civ.App.

1974); *Paul Tishman Co. v. Carney & Del Guidice, Inc.*, 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971), *aff'd*, 34 N.Y.2d 941, 359 N.Y.S.2d 561, 316 N.E.2d 875 (1974). Other courts have held that a builder's risk insurance policy includes a named insured's negligence as an insurable interest, even if the policy contains the limiting language "as [the insured's] interests may appear." *See Baugh–Belarde Constr. Co. v. College Utilities Corp.*, 561 P.2d 1211 (Alaska 1977); *Dyson & Co. v. Flood Engineers, Architects, Planners, Inc.*, 523 So.2d 756 (Fla.Dist.Ct.App.1988); *State ex rel. Regents of New Mexico State University v. Siplast, Inc.*, 117 N.M. 738, 877 P.2d 38 (1994). While the latter opinion has been labeled the majority opinion by those courts that have followed it, *see, e.g., Dyson & Co. v. Flood Engineers, Architects, Planners, Inc.*, 523 So.2d at 759, the Court is not persuaded that this is indeed the case. In any event, the Court is not governed by labels such as "majority" or "minority," particularly when there is some question as to which opinion is "majority" and which is "minority," and there are strong policy considerations that support both viewpoints. The Court finds much more persuasive the definition of an insurable interest as it appears in the Maine Insurance Code. Title 24–A, section 2406(2) of the Maine Revised Statutes states that an insurable interest "means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." 24–A M.R.S.A. 2406(2). The Court is satisfied that an insured's interest in being held free from any liability arising out of its involvement in a construction project is indeed a substantial economic interest of the kind referred to in the statute.

GE, therefore, had an insurable interest in the Ashland project at the time it was destroyed by fire, whether or not it can point to a turbine or any other equipment for which it still bore the risk of loss. As is clear from this declaratory judgment action, GE faced a significant economic liability for its potential negligence at the construction site. While neither GE nor Zurich argued the applicability of the Maine statute in their memoranda in support of or in opposition to summary judgment, or during the hearing on the motion for summary judgment on September 12, 1996, the Court is convinced that it is determinative and that GE's liability was covered under the Policy.

The terms of the Policy itself support this conclusion. The Policy contained a list of causes of physical loss which were specifically excluded from coverage. Negligence was not one of them. Among the list of exclusions was the following:

> b) cost of making good faulty or defective workmanship or material, but this exclusion shall not apply to physical damage resulting from such faulty or defective workmanship or material. . . .

The Policy specifically did not exclude defective workmanship; nor did it specifically exclude damages flowing from an insured's negligence. It follows that Zurich intended to cover all insureds for any liability flowing from their negligence. Specifically, Zurich intended to insure GE for GE's liability, and not simply GE's property interests.

## CONCLUSION

As a named insured on Zurich's builder's risk insurance policy for the Ashland project, GE had an insurable interest in its own negligence. Because an insurer may not sue one of its own insureds for damages, Zurich is prohibited from pursuing a subrogation claim against GE. Therefore, Zurich's Motion for Summary Judgment is denied and GE's Cross–Motion for Summary Judgment is granted.

*SO ORDERED.*