NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0549n.06

No. 18-5617

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Policy Number 13-000093, | ) ) ) ) | **FILED** Oct 30, 2019 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| SUNBELT RENTALS, INC., | ) ) | |
| Defendant-Appellant. | ) ) ) | |

Before: NORRIS, STRANCH, and LARSEN, Circuit Judges.

PER CURIAM. Certain Underwriters at Lloyd's, London ("Lloyd's" or the "Company") insured FCA-Demonbreun, LLC and Faison & Associates, LLC (the "Named Insured" or "Owner") through an all-risk builder's policy (the "Policy") covering a large construction project (the "Project"). Lloyd's paid a claim under the Policy for water damage, allegedly caused when a heater supplied by defendant Sunbelt Rentals, Inc. ("Sunbelt") malfunctioned and activated the building's sprinkler system.

Lloyd's filed suit in federal court, seeking a declaration that it could recover its claim payments through subrogation against Sunbelt. But Sunbelt argued that the Policy precluded the subrogation. The district court sided with Lloyd's, and Sunbelt appealed. After careful review of the Policy's relevant provisions, we conclude that the Policy is ambiguous as to whether Lloyd's

can sue Sunbelt. Because Tennessee law requires that we construe this ambiguity against the insurer, Lloyd's, we thus resolve the question in Sunbelt's favor and REVERSE the district court.

I.

The Project involved construction of a 209-unit residential building located in Nashville, Tennessee. The Named Insured purchased the Policy from Lloyd's to insure against any direct physical loss or damage to the Project. The Named Insured then contracted with Balfour Beatty Construction, LLC ("Balfour") to serve as the general construction contractor. Eventually, Balfour subcontracted with Sunbelt to provide several torpedo heaters for the Project. During construction, a sprinkler head on the fourth floor of the Project activated, allegedly due to a malfunctioning Sunbelt torpedo heater.

Lloyd's reimbursed the Named Insured for the resulting water damage, totaling $976,201 net of a $10,000 deductible. Lloyd's then sought reimbursement from Sunbelt through subrogation. Lloyd's sued Sunbelt in federal court, seeking a declaration that it could pursue subrogation under the Policy. Both parties moved for summary judgment. Lloyd's argued that it could sue Sunbelt for the claimed losses because Sunbelt does not qualify as an "Additional Insured" under the Policy, and even if Sunbelt is an Additional Insured, that status is limited to the value of its equipment used in the Project. For its part, Sunbelt asserted that it does qualify as an Additional Insured, and that Lloyd's expressly waived its subrogation rights via the Policy's subrogation provision.

The Policy defines Additional Insured in this way:

> To the extent required by any contract or subcontract, and then only as their respective interests may appear, any individual(s) or entity(ies) specified in such contract or subcontract are recognized as Additional Insured. As respects Architects, Engineers, Manufacturers and Suppliers, the foregoing is limited to their site activities only precluding coverage respectively under policies for Professional Liability and Products Liability and Warranty coverage as applicable.

2

Section 11 of Part D of the Policy (General Conditions) confers broad subrogation rights in favor of Lloyd's in the event of a covered claim. However, it also contains certain limitations directly at issue in this appeal:

> If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities. The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
>
> The Company will have no rights of subrogation against:
>
> A. Any person or entity, which is a Named Insured or an Additional Insured;
>
> B. Any other person or entity, which the Insured has waived its rights of subrogation against in writing before the time of loss;
>
> Notwithstanding the foregoing, it is a condition of this policy that the Company shall be subrogated to all the Insured's rights of recovery against:
>
> A. Any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable . . . .

Relevant to the waiver of subrogation in subsection B above, the agreement between the Named Insured and Balfour (the "Balfour Contract") provided that:

> The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Subcontractors [sic], agents and employees each of the other, and (2) the Architect and separate contractors, if any, and their subcontractors and subcontractors, for all damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this paragraph 11.3 or any other property insurance applicable to the Work . . . .
>
> . . . .
>
> Owner will provide All Risk Builders Risk-Completed Form Insurance for the full value of the Work and will absorb deductible losses not covered by such insurance, without, however, waiving its rights to proceed against any negligent party. . . .

3

Reviewing these provisions, the district court held that Sunbelt is an Additional Insured under the Policy but that Sunbelt's limited insured status permits Lloyd's subrogation action, notwithstanding the Policy's waivers. Only Sunbelt has appealed.[1]

II.

This court reviews a district court grant of summary judgment de novo. *Duncan v. Muzyn*, 885 F.3d 422, 424 (6th Cir. 2018). Because federal jurisdiction in this case is premised on diversity of citizenship, we apply Tennessee law. *See Great Am. Ins. Co. v. E.L. Bailey & Co., Inc.*, 841 F.3d 439, 443 (6th Cir. 2016).

Under Tennessee law, insurance contracts are interpreted using "the same rules of construction used to interpret other contracts." *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citation omitted). "An insurance contract 'must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning.'" *Id.* at 306 (quoting *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006)). "'[A]ll provisions in the contract should be construed in harmony with each other . . . to promote consistency and avoid repugnancy between the various provisions of a single contract.'" *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).

"In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (citation omitted). "However, a 'strained construction may not be placed on the language used to find ambiguity

---

[1] Lloyd's does not appeal the district court's determination that Sunbelt qualifies as an Additional Insured under the Policy.

where none exists.'" *Id.* (quoting *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

The Policy covered losses incurred by the Named Insured, along with losses incurred by other contractors and subcontractors as Additional Insureds, "only as their respective interests may appear."[2] In other words, if something happened to the Project and Sunbelt's equipment was destroyed, its coverage under the Policy as an Additional Insured would have been limited to recovering the value of its equipment (i.e., its "interests").

With respect to subrogation, the Policy provides that Lloyd's "will have no rights of subrogation against . . . [a]ny person or entity, which is . . . an Additional Insured." Sunbelt argues that this provision prevents Lloyd's subrogation action against it. The district court held that "the undisputed facts establish [Sunbelt] qualifies as an Additional Insured under the Policy." *Certain Underwriters at Lloyd's, London v. Sunbelt Rentals, Inc.*, No. 3:17-CV-00274, 2018 WL 3453927, at *5 (M.D. Tenn. May 17, 2018).

Despite finding that Sunbelt was an Additional Insured, the district court held that the Policy's subrogation waiver did not obviate Lloyd's right of subrogation against Sunbelt entirely. Specifically, the district court found that because Sunbelt is recognized as an Additional Insured "only as [its] respective interests may appear," the subrogation waiver only prevented Lloyd's from suing Sunbelt for damage to Sunbelt's equipment—i.e., Sunbelt's property interest covered by the Policy. *Id.* Under the district court's interpretation, therefore, Lloyd's could sue Sunbelt for any damage covered by the Policy except damage to Sunbelt's own equipment.

---

[2] Generally, an "additional insured" is defined as "Someone who is covered by an insurance policy but who is not the primary insured." Black's Law Dictionary (10th ed. 2014).

The district court's interpretation of the Policy's subrogation waiver is not obviously correct. If the Policy precluded subrogation against an Additional Insured, it would make sense to focus on what impact, if any, the coverage limitations inherent in the term "Additional Insured" would have on subrogation. But that is not what the Policy says. It precludes subrogation against any *entity* that *qualifies* as an Additional Insured. Drafted this way, the question as to whether an entity qualifies as an Additional Insured is plausibly read as a binary one, requiring only a yes-or-no answer. Stated another way, one could create a list of persons or entities that qualify as Additional Insureds under the Policy, and Sunbelt would unequivocally be on that list. The text of the Policy thus arguably cuts against the district court's conclusion that the limitation on the coverage afforded to an Additional Insured under the Policy diminishes Sunbelt's status as an *entity* which is an Additional Insured.

It is also worth noting that insurance policies routinely exclude coverage for losses stemming from the sole negligence of an additional insured, but no such exclusion was present in the Policy. *See, e.g.*, *Kummer Enters., Inc. v. Valley Forge Ins. Co.*, No. 1:09-CV-109, 2011 WL 710654, at *4 (W.D. Mich. Feb. 23, 2011) ("Under the Policy, the insurance coverage provided to an additional insured does not apply to certain damages arising out of the sole negligence of that additional insured."). Lloyd's included specific exceptions under the "no subrogation" provision of the Policy clarifying that, despite the provision, it may still pursue subrogation rights against Additional Insureds in certain circumstances (e.g., deficiencies in the work of professional architects or engineers). If Lloyd's had intended to retain subrogation rights for damages arising out of a subcontractor's sole negligence, it could have done so expressly.

At the same time, because the Policy "recognize[s]" Sunbelt as an Additional Insured solely insofar as its "interests may appear," it could also be argued that the agreement only prevents

Lloyd's from suing Sunbelt in connection with the specific property interests for which Sunbelt is "recognized" under the Policy—the heaters it supplied. On this theory, Sunbelt would qualify as an Additional Insured with respect to its *property* interest in the heaters but not with respect to its *liability* for damage caused to the building. This interpretation finds support in a line of cases holding that a builder's risk insurance policy does not preclude subrogation actions against a subcontractor for damage caused by its own negligence. *See Gen. Elec. Co. v. Zurich-Am. Ins. Co.*, 952 F. Supp. 18, 20–21 (D. Me. 1996) (citing cases). Indeed, some courts have allowed subrogation under insurance policies nearly identical to this one. *See Turner Const. Co. v. John B. Kelly Co.*, 442 F. Supp. 551, 555 (E.D. Pa. 1976) (concluding that subcontractor was additional insured but not for liability purposes). In *Turner*, the subcontractor argued, as Sunbelt does here, that a policy's express subrogation waiver against "any person, firm or corporation insured hereunder" should preclude any recovery by the insurer for the subcontractor's negligence. *Id.* But the *Turner* court rejected this argument, explaining that "[t]he waiver clause does not extend . . . to relieving a subcontractor for its negligence in causing damage to property owned by the general contractor. For liability purposes, [the subcontractor] was not an 'insured hereunder.'" *Id.*

Notwithstanding decisions like *Turner*, "[o]ther courts have held that a builder's risk insurance policy includes a named insured's negligence as an insurable interest, even if the policy contains the limiting language 'as [the insured's] interests may appear.'" *Zurich-Am. Ins. Co.*, 952 F. Supp. at 21; *Baugh-Belarde Const. Co. v. Coll. Utilities Corp.*, 561 P.2d 1211, 1216 (Alaska 1977) (holding that an "insurer could not recover through subrogation from a subcontractor which was insured under its builder's risk policy," even for damages caused by the subcontractor's negligence). The jurisdictions adhering to the *Baugh-Belarde* approach sometimes rely on what

is known as the anti-subrogation rule, which generally prevents insurers from pursuing subrogation against additional insureds. *See Miller v. Russell*, 674 S.W.2d 290, 291–92 (Tenn. Ct. App. 1983) (explaining the provenance of the anti-subrogation rule).

In sum, jurisdictions differ in how they would interpret the provisions at issue here. In the jurisdictions following *Turner*, Lloyd's could sue Sunbelt for its negligence. In those following *Baugh-Belarde*, Sunbelt would escape liability. Not surprisingly, the parties each cite authorities from the jurisdictions that support their respective legal positions. Yet Tennessee courts have not expressly addressed this issue. Although there is some evidence that Tennessee favors an expansive application of the anti-subrogation rule, *see Miller*, 674 S.W.2d at 292 (commenting favorably on the approach taken in *Baugh-Belarde* and similar cases), Tennessee courts have not addressed or rejected *Turner*'s approach. And given the conflicting authorities, the Policy's subrogation waiver can reasonably be understood in two ways—the *right* way would depend on which line of cases Tennessee decides to follow.

We encountered the same problem in *American Insurance Co. v. L.H. Sowles Co.*, 628 F.2d 967 (6th Cir. 1980). There, as here, we addressed whether a builder's risk policy precluded subrogation by an insurer against an insured subcontractor with respect to damage done to the property of other subcontractors. *Id.* at 968. Because the "the courts of Ohio ha[d] not yet addressed the problem," and the parties relied on "authorities from other jurisdictions," we concluded that the policy could "reasonably be understood in two ways." *Id.* As Ohio law required, we construed the ambiguous language "in the manner most favorable to the insured," thereby preventing the insurer from pursuing subrogation against the subcontractor. *Id.* at 969.

Like Ohio, Tennessee requires that courts construe ambiguous terms in an insurance policy against the insurer. *See, e.g.*, *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 179

(Tenn. 2019); *Naifeh*, 204 S.W.3d at 770. Here, the Policy's subrogation waiver is ambiguous regarding whether Lloyd's can sue Sunbelt for damage caused by Sunbelt's negligence. Under Tennessee law, we resolve that question in Sunbelt's favor. Lloyd's suit against Sunbelt, therefore, fails, and Sunbelt is entitled to summary judgment.[3]

### III.

For these reasons, we REVERSE the district court's judgment denying Sunbelt's motion for summary judgment and granting Lloyd's motion for summary judgment.

---

[3] Sunbelt also argues that Lloyd's gave up its right to bring this subrogation action when, through the Policy, it waived its rights against "[a]ny other person or entity, which the Insured has waived its rights of subrogation against in writing before the time of loss." But because our holding resolves the appeal, we need not decide whether this additional limitation on subrogation would also prevent Lloyd's from suing Sunbelt.

**NORRIS, Circuit Judge, concurring**. I agree that the district court judgment must be reversed and that summary judgment in favor of Sunbelt is proper. I write separately because I believe the policy language unambiguously dictates that result.

As noted above, Tennessee courts indeed require ambiguous insurance policies to be construed against the insurer (here Lloyd's). *See, e.g.*, *Lammert v. Auto-Owners (Mut.) Life Ins. Co*, 572 S.W.3d 170, 179 (Tenn. 2019). "However, a 'strained construction may not be placed on the language used to find ambiguity where none exists.'" *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (quoting *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

Here, the policy states that "[Lloyd's] will have no rights of subrogation against . . . [a]ny person or entity, which is a Named Insured or an Additional Insured[.]" It is undisputed on appeal that Sunbelt is an *entity* that is *an additional insured*. Therefore, Lloyd's has no right of subrogation against Sunbelt and that should end the inquiry. It is irrelevant that Sunbelt was allegedly at fault for the loss. An insurer's right of subrogation arises specifically when a third party is at fault. *See York v. Sevier Cty. Ambulance Auth.*, 8 S.W.3d 616, 619 (Tenn. 1999) (citation omitted) (noting that under subrogation a "wrongdoer should compensate the insurer for payments the insurer made to the insured"). So it is axiomatic that a *waiver* of all subrogation rights against Sunbelt necessarily includes losses stemming from events where Sunbelt is alleged to be at fault. Otherwise, the waiver would have no meaning.

The coverage afforded to Sunbelt and other additional insureds is limited to the extent of their "interests" in the project. But Sunbelt's coverage limitations are not relevant to the question of Lloyd's subrogation limitations. It is worth noting that the policy language broadly waiving Lloyd's subrogation rights is immediately followed by certain exceptions, including an express

10

reservation of Lloyd's subrogation rights for losses caused by negligent architects or engineers. This confirms that Lloyd's understood that it was waiving its subrogation rights, and Lloyd's was capable of drafting exceptions to that waiver. None of the policy's waiver exceptions applies to Sunbelt.

It is instructive to briefly consider the common-law insurance principle called the anti-subrogation rule, explained by the Tennessee Court of Appeals this way:

> In the situation where a subcontractor negligently causes damage to the structure, often the insurance company will seek to recover against the subcontractor the amount paid to the owner or general contractor under the policy. Courts, rather uniformly, have disallowed such subrogation attempts, determining that the subcontractor and the owner/general contractor are coinsureds under the policy. *Transamerica Insurance Co. v. Gage Plumbing Co.*, 433 F.2d 1051 (10th Cir. 1970); *J.F. Shea Co. v. Hynds Plumbing Co.*, 96 Nev. 862, 619 P.2d 1207 (1980); *Board of Education v. Hales*, 566 P.2d 1246 (Utah 1977); *Baugh-Belarde Construction Co. v. College Utilities Corp.*, 561 P.2d 1211 (Alaska 1977); *South Tippecanoe Corp. v. Shambaugh & Son, Inc.*, 395 N.E.2d 320 (Ind. App. 1979); *St. Paul Fire Insurance Co. v. Murray Plumbing Corp.*, 65 Cal. App. 3d 66, 135 Cal. Rptr. 120 (1976); *Factory Insurance Association v. Donco Corp.*, 496 S.W.2d 331 (Mo. App. 1973); *United States Fire Insurance Co. v. Beach*, 275 So. 2d 473 (La. App. 1973).

*Miller v. Russell*, 674 S.W.2d 290, 292 (Tenn. Ct. App. 1983). The anti-subrogation rule is based on an inherent conflict of interest if an insurer could proceed against one of the policy's insureds (including additional insureds). Though some courts have not uniformly applied the anti-subrogation rule, it is favored in Tennessee and serves as the majority rule in the construction context. *See Construction Project Relationships*, 16 *Couch on Ins.* § 224:32 (collecting cases).

In the end, it is unnecessary to wrestle with whether or how the anti-subrogation rule might apply in this case because Lloyd's plainly incorporated the well-known common-law rule into the text of the insurance policy. There is no public policy or case law that prevents an insurance company from contracting away its subrogation rights against additional insureds and, in my view, Lloyd's has unambiguously done so here.