[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 03-11106
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00795-CV-T-27-MAP

AJAX BUILDING CORPORATION,
f.u.b.o. St. Paul Fire &
Marine Insurance Company,

Plaintiff-Appellee,

versus

HARTFORD FIRE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(January 27, 2004)


Before TJOFLAT, HULL and FAY, Circuit Judges.

FAY, Circuit Judge:

Defendant-Appellant, Hartford Insurance Company ("Hartford"), appeals the district court's award of summary judgment in favor of Plaintiff-Appellee, Ajax Building Corporation ("Ajax"), which had initiated suit for the use and benefit of St. Paul Insurance Company ("St. Paul"). Ajax sued Hartford, seeking to recover $225,000 St. Paul had paid to Kelley Equipment, Inc. ("Kelley") on behalf of Ajax, due to a damaged crane, on the basis that Ajax and the crane were insured under a builder's risk policy issued by Hartford. Although Hartford concedes that Ajax was an insured under both the builder's risk policy and a supplement to this policy, the Difference in Conditions ("DIC") policy, Hartford argues that the damaged crane is not covered under either policy. The district court found that the DIC policy contained inconsistent and ambiguous provisions and therefore entered summary judgment in favor of Ajax, concluding that the crane was indeed covered under the DIC policy. However, after reviewing the DIC policy, we find that it unambiguously excludes the crane from coverage, and therefore reverse the district court's grant of summary judgment and remand with directions to enter final judgment in favor of Hartford.

## I.

This insurance dispute arose out of an incident during the construction of the Pinellas County Jail Facility Expansion Project ("Project"). Clark Construction

Group, Inc. ("Clark"), the general contractor, was required under the prime contract to procure a builder's risk insurance policy naming all of its subcontractors as additional insureds, and this policy was to insure against all risks of loss, unless specifically excluded, with a policy limit equal to the completed value of the jail facility. The builder's risk policy and the DIC supplement to this policy issued by Hartford naming both Clark and Ajax as insureds is a result of these contract terms.

Clark subcontracted with Ajax for the purpose of performing structural concrete work on the Project. Clark, in accordance with the subcontract terms, leased a crane from Kelley that Ajax was to use in its structural work on the Project. While Ajax was performing crane operations, Kelley's crane collapsed and was damaged. As a result of this accident, Kelley sued Clark and Ajax in a Florida state court for damage to the crane. Hartford defended Clark in this state action pursuant to coverage under a contractor's equipment liability policy, while St. Paul defended Ajax under a general liability policy Ajax had obtained in conjunction with the work it was performing on the Project. Clark made demand on St. Paul to pay for the damaged crane under Ajax's general liability policy, claiming that pursuant to its subcontract with Ajax, Ajax was obligated (1) to have named Clark as an additional insured on the general liability policy issued by St.

3

Paul and (2) to indemnify, defend, and hold Clark harmless for property Ajax damaged in the course of its work on the Project. Ajax made its own demand on Hartford to pay the claim for the damaged crane under Clark's builder's risk policy.[1] Ultimately, the state court action resulted in a settlement, where St. Paul, on behalf of Ajax, and Hartford, on behalf of Clark, agreed to pay for the damaged crane, with Hartford paying $75,000 under Clark's contractor's equipment policy and St. Paul paying $225,000 under Ajax's general liability policy.

Subsequent to this state court action, Ajax, on behalf of St. Paul, sued Hartford under the builder's risk policy to recoup the $225,000 St. Paul had paid to Kelley. In its complaint, Ajax claimed it was a named insured under Hartford's builder's risk policy and that Hartford had a contractual obligation under this policy to defend and indemnify Ajax against the crane loss liability. However, the policy attached to Ajax's complaint was not the original builder's risk policy, but rather was a composite of parts of the DIC policy and a contractor's equipment policy. The district court determined, and this is not challenged by the parties, that the contractor's equipment policy does not name Ajax as an insured.[2] As to the

---

[1] The document Ajax relied on to make its demand to Hartford was not in fact the original builder's risk policy, but rather was a composite of parts of the DIC policy and the contractor's equipment policy.

[2] Hartford maintains that the subcontract agreement between Ajax and Clark did not require Clark to name Ajax as an insured under its contractor's equipment policy. Hartford does admit that Clark was obligated under the prime contract to name Ajax as an insured under

4

original builder's risk policy, the district court found, and this is also not challenged by the parties, that although Ajax is considered an insured under this policy, the policy does not cover the crane equipment damaged. However, the district court did conclude that Hartford owed Ajax insurance coverage for the damaged crane under the supplement to the builder's risk policy, the DIC policy. In reaching this conclusion, the district found that certain provisions of the DIC policy were inconsistent and ambiguous. Accordingly, the district court construed these ambiguous provisions against the drafter, Hartford, and found the DIC policy provided coverage for the crane. It is only this finding as to the scope of coverage within the DIC policy that is challenged in this Court.

## II.

We review a grant of summary judgment *de novo*. *Bosarge v. United States*, 5 F.3d 1414, 1416 (11th Cir. 1993). Since the issues raised here were decided as a matter of law based upon written document, the district court's order is subject to

---

its property policies, the builder's risk policy and the DIC policy, and Ajax is indeed a named insured under both these policies. Nevertheless, Hartford contends that these property policies do not cover the damaged crane. Ajax argued to the district court that under the rationale of *Dyson & Co. v. Flood Engineers, Architects, Planners, Inc.*, 523 So. 2d 756 (Fla. 1st DCA 1988), regardless of whether Ajax is a named insured under the contractor's equipment policy or whether the builder's risk policy and DIC policy cover the crane, Ajax is still entitled to the benefits of *all insurance* procured by Clark due to the prime contract requiring Clark to provide insurance of "all risks." However, because the district court found coverage for the crane under the express terms of the DIC policy, it did not decide this issue, and since the parties do not raise the issue on appeal, we also decline to address it.

5

complete and independent review by this Court. *Id.* In reviewing the grant of summary judgment, this Court applies the same standard as used in the district court. *Wilson v. Northcutt*, 987 F.2d 719, 721 (11th Cir. 1993).

## III.

Hartford argues that under the "Coverage" provisions of the DIC policy, the damaged crane is expressly excluded. The DIC policy provides for coverage as follows (emphasis added):

A. COVERAGE

1. We will pay for ALL RISK OF DIRECT PHYSICAL "Loss" to Covered Property ... caused by any of the Covered Causes of Loss... Covered Property is defined as:

   a. Structures ... fixtures, equipment, machinery and similar property which will become a permanent part of the structure...

   d. **Property of others used or to be used in, or incidental to the construction operations,** for which you may be responsible or shall, prior to any "loss" for which you make a claim, have assumed responsibility.

2. Property Not Covered

   Covered Property does not include:

   a. **Machinery, tools, equipment, or**

6

> **other property which will not become a permanent part of the structure(s)** described in the Declarations or Schedule unless the replacement cost of such property is included in the contract price and reported to us;

It is undisputed that the damaged crane initially falls under the "Covered Property" provision, as it certainly is considered "property of others used or to be used in, or incidental to the construction operations." Nevertheless, Hartford claims that the crane is excluded from coverage under the "Property Not Covered" provision because it is "equipment, or other property which will not become a permanent part of the structure." The district court, however, found the following:

> To the extent that these clauses are ambiguous or inconsistent, under Florida law, any ambiguity or inconsistency must be construed against Hartford and in favor of coverage. Moreover, the exclusionary clauses must be construed more strictly than the coverage clauses in the DIC policy.

The district court thus concluded that the DIC policy provides coverage for the damaged crane.

The district court was certainly correct in its statement of Florida law that ambiguities or inconsistencies must be construed against the insurer and in favor of coverage. *Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679 (Fla. 1st DCA

7

1998).  However, simply because one provision gives a general grant of coverage and another provision limits this coverage does not mean there is an ambiguity or inconsistency between the two.  This is the very nature of an insurance contract; exclusions in coverage are expressly intended to modify coverage clauses and to limit their scope.  *Cont'l Corp. v. Aetna Cas. & Sur. Co.*, 892 F.2d 540, 546 (7th Cir. 1989).  The exclusion clause in this DIC policy is not hidden among other language so as to create ambiguity or confusion.  Both the coverage clause and the exclusion clause are given equal dignity within the contract.  We agree with the district court that in Florida exclusionary clauses are construed more strictly than coverage clauses, and if exclusions are ambiguous or susceptible of more than one meaning, they must be construed in favor of coverage.  *Psychiatric Assoc. v. St. Paul & Fire Marine Ins. Co.*, 647 So. 2d 134 (Fla. 1st DCA 1990); *Allstate Ins. Co. v. Shofner*, 573 So. 2d 47 (Fla. 1st DCA 1990).  However, there is simply nothing about the exclusionary clause in this contract that is ambiguous.  Consequently, the rule concerning ambiguities is not applicable.  Indeed, the exclusionary clause is express in its meaning: only one subset of "property of others," "property which will not become a permanent part of the structure," is excluded.  Florida law cautions that courts must not add meaning to the terms of an insurance policy to create an ambiguity where none exists.  *City of Delray Beach,*

8

*Fla. v. Agric. Ins. Co.*, 85 F.3d 1527, 1531 (11th Cir. 1996) (citing *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938 (Fla. 1979)).

When examining the nature of builder's risk policies, which the DIC policy is essentially a supplement to, it makes sense to provide coverage for equipment and property of others, but then to exclude any portion of such property if it will not become a permanent part of the structure. The very purpose of a "builder's risk policy" is to provide protection for the building under construction. Deutsch, Kerrigan, & Stiles, *Construction Industry Insurance Handbook* § 9.6, at 151 (1991). *See also, e.g., Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 914 (5th Cir. 1997); *Gust K. Newberg Constr. Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1364 (7th Cir. 1987). Just as there are standard forms of property insurance used to insure existing buildings, builder's risk policies are used to insure the building while it is in the process of being built. Deutsch, *supra* § 9.2, at 144-45. In addition to insuring the structure itself, these policies also typically include building materials, machinery, and equipment on the premises that are awaiting installation. *Id.* § 9.6, at 151. This kind of machinery and equipment is clearly different from a contractor's machinery and equipment that is used in the construction process, such as the damaged crane.[3] The type of machinery and

_____

[3]Contractor's machinery and equipment used in the construction process are typically covered by a different kind of policy, sometimes called an "equipment floater policy." *Id.* § 9.6,

equipment intended to fall under the definition of "covered property" in a builder's risk policy is that which will become a permanent part of the structure – this includes materials such as elevators, doors, windows, electrical equipment, and water pumps. However, since these materials are generally delivered to the site before they are required in order to avoid delays in construction, ownership of the property may not yet belong to the owner of the building. *Id.* § 9.6, at 150. It is these materials that the DIC policy is referring to when it provides coverage for "property of others." Although Kelley's damaged crane technically falls within the category "property of others," it is not the type of property to become a part of the building and covered under a builder's risk policy; consequently, it is expressly excluded in the DIC policy by the provision requiring covered property to be that which will become a permanent part of the structure.

## IV.

In conclusion, we find that the district court erred in construing the DIC policy against Hartford and in favor of coverage. Accordingly, we reverse the district court's grant of summary judgment and remand with directions to enter final judgment in favor of Hartford.[4]

at 152.

[4] The district court awarded attorney's fees to Ajax under Florida Statutes, section 627.428 on the basis that judgment was entered in favor of Ajax, an insured. However, since we

**REVERSED and REMANDED with instructions.**

---

now reverse the judgment in favor of Ajax, the award of attorney's fees is vacated.