PER CURIAM.
 

 In this workers’ compensation case, the employer and carrier challenge an order of the judge of compensation claims granting claimant’s request for a “one-time” alternate orthopedist pursuant to section 440.13(2)(f), Florida Statutes (2006). The employer and carrier contend that claimant previously exercised her right to a change in physician while under a managed care arrangement, and is not entitled to a second. We agree, and reverse. Because of this disposition, it is unnecessary for us to address the remaining issues raised by the employer and carrier.
 

 Background
 

 On August 20, 2003, claimant suffered injuries to her wrist, shoulder, hip and back. Claimant’s employer initially provided medical care pursuant to a managed care arrangement as authorized by section 440.134(2)(a), Florida Statutes (2002). Authorized care was furnished by three orthopedists, each treating a different body part, and all affiliated with the same clinic.
 

 On October 8, 2003, claimant filed a petition for benefits, seeking an “alternate orthopedic physician” because she was dissatisfied with the care she was receiving. In response, the lawyer for the employer and carrier wrote a letter to claimant’s lawyer offering a list of network providers from which claimant could choose a onetime change in physician. Shortly thereafter, it became clear that the lawyer for the employer and carrier believed claimant had chosen Dr. Macksoud (a hand special
 
 *559
 
 ist in the same clinic as the other providers) as her alternate orthopedist.
 

 The lawyer for the employer and carrier confirmed claimant’s choice of Dr. Mack-soud by multiple letters to claimant’s lawyer. On one occasion, the former asked whether claimant’s choice of Dr. Macksoud was her choice of an independent medical examiner, or her one-time change in physician. Within three days, the lawyer received a return facsimile of his letter containing the aforementioned inquiry with a handwritten note upon it stating: “Mack-soud is alt. ortho[.] Thanks,” along with an indecipherable signature. Thereafter, the employer and carrier, in seven separate writings, confirmed claimant’s choice of Dr. Macksoud as her one-time change in doctor. Claimant began treatment (which included surgery) with Dr. Macksoud in December 2003, and continued to treat with him for four' years.
 

 On January 1, 2006, the employer and carrier discontinued them managed care arrangement as permitted by section 440.134(2)(a), Florida Statutes (2005). Claimant then filed a petition for benefits seeking an alternate doctor to replace Dr. Macksoud because she was not satisfied with his treatment. The employer and carrier responded that claimant had used her one-time change in physician when she selected Dr. Macksoud.
 

 The parties attended a merits hearing and, for the first time, claimant asserted that the transfer of care to Dr. Macksoud did not count as her one-time change in physician, because he was professionally affiliated with the other orthopedists with whom she had treated. At the hearing, the numerous letters confirming claimant’s selection of Dr. Macksoud were introduced into evidence. The judge excluded the handwritten note based on claimant’s authenticity objection. He subsequently entered an order granting claimant’s request for a one-time change in physician pursuant to section 440.13(2)(f), Florida Statutes (2006). According to the judge, section 440.13(2)(f) requires a carrier to authorize an alternate physician who is not professionally affiliated with the prior treating physician, and claimant did not (and could not) waive that requirement.
 

 In the order, the judge explained that he had excluded the handwritten note purportedly authored by claimant’s lawyer because there was no direct evidence establishing claimant’s lawyer had written the note. The judge failed, however, to address the circumstantial evidence pointing to claimant’s lawyer (or someone in his office) as the author of the handwritten note. The judge also found the handwritten note was subject to various interpretations including a possible assertion that claimant was selecting Dr. Macksoud as her “second opinion.”
 

 Evidence Supporting Claimant’s Selection
 

 The requirements of the evidence code are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 
 See
 
 § 90.901, Fla. Stat. (2007). The use of circumstantial evidence to authenticate is permissible. Charles W. Ehrhardt, Florida Evidence, § 901.5 (2007 ed.). Authentication occurs in a situation where the offered item, considered in light of the circumstances, logically indicates the personal connection sought to be proved.
 
 Id.
 
 Pursuant to the “reply letter” doctrine, a letter can be authenticated upon a showing that it was “apparently in reply” to an earlier letter sent to the purported author of the reply letter.
 
 Atlas Subsid. of Fla. Inc. v. O. & O. Inc.,
 
 166 So.2d 458 (Fla. 1st DCA 1964). Once a prima facie case of authenticity has been established, the document is authenticated, and the trier of fact must resolve any disputes regard
 
 *560
 
 ing the genuineness of the exhibit.
 
 Pace v. State,
 
 854 So.2d 167 (Fla.2003).
 

 Here, the judge failed to appreciate the distinction between the admissibility of the handwritten note and the ultimate finding regarding its genuineness. Although the judge found the handwritten note was “clearly received” by the lawyer for the employer and carrier, he excluded it because no one testified that the handwriting was that of claimant’s lawyer. The handwritten response appears to be a direct reply (as indicated by its timing, content and unique location) to the request by the lawyer for the employer and carrier to claimant’s lawyer for clarification. Moreover, the circumstantial evidence establishes a sufficient logical connection between claimant’s lawyer and the handwritten note to permit the admission of the document into evidence. This circumstantial evidence includes a petition for benefits requesting an alternate orthopedist, seven written confirmations of claimant’s selection of Dr. Macksoud as her choice of her one-time change in orthopedist (and the lack of any objections to, or rebuttal of, such assertions), medical records establishing treatment by Dr. Macksoud and claimant’s testimony that Dr. Macksoud had taken over her orthopedic care. The judge abused his discretion by excluding the handwritten note from evidence, and by failing to weigh the circumstantial evidence to make a finding whether claimant chose Dr. Macksoud as her alternate orthopedist.
 

 Managed Care
 

 We next address a question of first impression: whether the discontinuation of a managed care plan (which is legally permissible regardless of the date of accident) creates additional substantive rights for those claimants who have received benefits prior to the cessation of the plan. For the reasons that follow, we hold that when a claimant receives, pursuant to a managed care arrangement, the substantial equivalent of a benefit otherwise available pursuant to Florida workers’ compensation law, she has received all to which she is legally entitled.
 

 Under Florida worker’s compensation law, an employer and carrier may elect to deliver medical benefits by an approved managed care arrangement.
 
 See
 
 § 440.134(2)(a), Fla. Stat. (2002). When they do so, workers subject to the managed care arrangement must receive medical services for work-related injuries as prescribed in the contract.
 
 See
 
 § 440.134(17), Fla. Stat. (2002). An alternative means of providing benefits under Florida workers’ compensation law does not require identical procedures.
 
 See Gassner v. Bechtel Constr.,
 
 702 So.2d 548, 552 (Fla. 1st DCA 1997) (holding that a collective bargaining agreement’s lack of a provision for an independent medical examination and choice of doctor did not diminish substantive benefits a claimant was entitled to under Florida workers’ compensation law).
 

 Under the managed care statute, the managed care plan must include a provision for the employee’s selection of a primary care provider, one change to another provider, and one second opinion within the same specialty and provider network as the treating physician.
 
 See
 
 §§ 440.134(10)(c), 440.134(6)(c) 9-10, Fla. Stat. (2002). Here, under the operable managed care arrangement, claimant could choose her alternate physician from a network provider list.
 

 A similar and parallel provision operating outside the managed care arrangement also affords a claimant the right to a change in treating physician.
 
 See
 
 § 440.13(2)(f), Fla. Stat. (2003). However, pursuant to that provision, the employer and carrier have the right to select the
 
 *561
 
 alternate physician, as long as he or she is not professionally affiliated with the previous physician.
 
 See id.; see also Butler v. Bay Center/Chubb Ins. Co.,
 
 947 So.2d 570, 573 (Fla. 1st DCA 2006).
 

 The right to change physicians pursuant to section 440.13(2)(f) is not without limitations.
 
 See Butler,
 
 947 So.2d at 573. “[T]he language of the statute plainly indicates a claimant may request a change of treating physician
 
 only once,
 
 no matter the number and variety of treatments needed by a claimant arising from the original accident.”
 
 Id.
 
 (emphasis in original). The means by which an alternate treating physician is selected pursuant to section 440.13(2)(f) is a procedural right.
 
 Id.
 
 (holding that prior versions of the statute governing the means of identifying the physicians with whom a claimant could seek alternate care were procedural enactments).
 

 As we held in
 
 Butler,
 
 the benefit provided in section 440.13(2)(f) is a claimant-initiated, one-time change of physician, the substantial equivalent of which claimant in this case received by selecting Dr. Macksoud. The means of identifying and selecting the alternate physician — i.e., whether by claimant’s choice (managed care), or by the employer and carrier pursuant to section 440.13(2)(f) — is a procedural mechanism in which a claimant has no vested substantive right.
 

 Because claimant received the substantial equivalent of the change in physician contemplated by section 440.13(2)(f), Florida Statutes (2006), while she was under the managed care arrangement, there is no legal basis to award a “second” one-time change in orthopedic physicians.
 

 For the foregoing reasons, the order is reversed and the ease is remanded with instructions that the judge consider the handwritten note and the circumstantial evidence and make a factual finding as to whether claimant chose Dr. Macksoud as her one-time change in physician. If the answer is in the affirmative, the request for an additional one-time change should be denied.
 

 REVERSED and REMANDED, with directions.
 

 WEBSTER, BROWNING, and LEWIS, JJ., concur.