DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE WARWICK CORPORATION, ALL SUNNY HOTELS, INC.,** and
**H.E.S. HOTELS CORP.,**
Appellants,

v.

**MATTHEW TURETSKY, ALLIANT INSURANCE SERVICES, INC.,
SWETT & CRAWFORD OF ILLINOIS, INC., CHUBB CUSTOM
INSURANCE COMPANY,** and **LANDMARK AMERICAN INSURANCE
COMPANY,**
Appellees.

No. 4D16-2567

[August 16, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case No. 10-47258 CACE (07).

Joel D. Eaton of Podhurst Orseck, P.A., Miami, and Blaut Weiss Law Group, Plantation, for appellants.

Lauren D. Levy of Levy Law Group, Coral Gables, for appellee Landmark American Insurance Company.

LEVINE, J.

Appellants have two insurance policies for their four hotels. The primary policy limit is $5,000,000 per occurrence and the excess policy limit is $21,035,000 per occurrence, with the excess policy payout not to exceed the listed value of each of the four insured hotels. Appellants argue the excess policy is ambiguous because the "statement of values," which includes the listed insured value of each of the four hotels, is not attached to the excess insurance policy and is not titled "Statement of Values." Appellants also claim the excess policy is "illusory" because one of the four insured hotels is valued at $5,000,000, which would equal the total value covered and payable under the primary policy.

We conclude that the policy is unambiguous because the "Statement of Values" was incorporated by reference in the excess policy and sufficiently authenticated. We also conclude that the excess policy is not illusory

because the terms of the excess policy do not "completely contradict" each other, and does not completely negate the entirety of coverage it purportedly provides. We affirm the trial court's summary judgment to that effect.

Appellants, The Warwick Corporation, All Sunny Hotels, Inc., and H.E.S. Hotels Corp. (collectively "Warwick"), had a primary insurance policy with Chubb Insurance Company for $5,000,000, which covered three hotels in New Orleans, Louisiana; Fort Lauderdale, Florida; and Deerfield Beach, Florida.

Warwick also had an excess insurance policy with Landmark American Insurance Company. The excess policy insured the three hotels referenced above as well as an additional hotel located in St. Thomas in the Virgin Islands. The excess policy insured the four properties for "$21,035,000 Per Occurrence not to exceed values reported," and covered "All Risk Excluding Flood, Earth Movement and Windstorm/Hail." The excess policy also contained the following Schedule Limit of Liability endorsement:

> It is understood and agreed that the following special terms and conditions apply to this policy:
>
> 1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":
>
> . . . .
>
> b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item . . . .

No "statement of values" was attached to the Landmark Policy. However, when Warwick's insurance agent marketed the policy to insurers, the agent used a spreadsheet titled "Property Spreadsheet" to represent the value of the four properties and transmitted the spreadsheet to wholesale brokers and Landmark. The agents, brokers, and Landmark all agreed the spreadsheet was a statement of values. The latest version of the alleged statement of values on file with Landmark stated the total value of the New Orleans hotel was $5,000,000; the value of the Fort Lauderdale hotel was $7,035,000; the value of the Deerfield Beach hotel

was $2,000,000; and the value of the St. Thomas hotel was $12,000,000. The total value of the properties was $26,035,000. The excess coverage for the New Orleans hotel was "shell coverage," as requested by Warwick, that covered only the building.

Landmark used the alleged statement of values to calculate the Landmark Policy's premium. Landmark decided to charge the minimum premium, $2,625, to insure the New Orleans property because triggering the policy would require that a single occurrence damage both the New Orleans property and at least one other property.[1]

Warwick subsequently suffered a loss at the New Orleans hotel that it alleged was in excess of the primary policy. Landmark claimed it was not liable because the policy stated Landmark was liable only for the property's value, $5,000,000, less the primary insurance, also $5,000,000.

Warwick sued Landmark for a declaratory judgment and breach of contract, claiming Landmark was liable under the excess policy.[2] Both Warwick and Landmark moved for summary judgment. Warwick argued the Landmark Policy was ambiguous because the property spreadsheet used as the statement of values was not titled "Statement of Values," and Landmark could not cure this ambiguity with extrinsic evidence. Warwick alternatively argued the Landmark Policy was illusory because it did not provide coverage for the New Orleans hotel. Landmark argued that it had sufficiently authenticated the latest statement of values, which was incorporated by reference, and that it was not liable under the unambiguous terms of the excess policy.

The trial court granted Landmark's motion for summary judgment. The trial court found that Landmark's policy incorporated the statement of values by reference and that the unambiguous terms of the policy indicated that Landmark was not liable. The trial court refused to rewrite the policy to create liability.

On appeal, Warwick reiterates the argument it made at trial and states the trial court erred in considering extrinsic evidence to resolve the

---

[1] Including taxes, Warwick paid $6,654.50 to insure the New Orleans hotel. Landmark claims that Warwick received a discount on the policy by lumping the New Orleans hotel with the other insured properties.

[2] Warwick also sued the primary insurer, Chubb, and Warwick's insurance agents and brokers. Warwick settled with Chubb, and the trial court stayed proceedings against the agents and brokers.

allegedly ambiguous policy.

We review the trial court's grant of summary judgment de novo.  *See Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Landmark's policy is clearly unambiguous.  A contract is ambiguous where the language at issue "is reasonably susceptible to more than one interpretation." *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996).  The terms of Landmark's policy are not "reasonably susceptible to more than one interpretation." *See id.*  The policy states that the "Limit Insured" is "$21,035,000 Per Occurrence *not to exceed values reported.*" (emphasis added).  An endorsement to the policy states Landmark's liability is limited to "100% of the individually stated value for each scheduled item of property insured at the location which had the loss *as shown on the latest Statement of Values on file with [Landmark]*, less applicable deductibles and primary and underlying excess limits." (emphasis added).  Thus, the policy has a *total* limit of liability of $21,035,000, but liability for each scheduled item is limited to that item's individual value.

The fact that the "statement of values" is not titled as such and is not attached to the policy does not render the policy ambiguous.  An outside document may be incorporated by reference into a contract. *See BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011).  This outside document must be authenticated, and authenticity is a question of fact.  *See* § 90.901, Fla. Stat. (2016). (stating that authentication requires the proponent of the evidence to offer evidence "to support a finding that the matter in question is what its proponent claims"); *Sunbelt Health Care v. Galva*, 7 So. 3d 556, 559-60 (Fla. 1st DCA 2009).  Thus, we find no error in the trial court using extrinsic evidence to resolve the factual question of whether the document titled "Property Spreadsheet" was the latest statement of values on file with Landmark.[3]

We next consider whether the Landmark Policy is illusory because it does not provide the coverage that Warwick claimed it obtained.

"When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997).  Thus, "[a]n insurance policy cannot grant rights in one paragraph and then retract

_____

[3] Warwick does not argue the trial court erred when it concluded no questions of fact existed towards the statement of values' authenticity.

the very same right in another paragraph called an 'exclusion.'" *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3d DCA 1990). Where a policy contains internally inconsistent language, a court must "adopt[] . . . the construction [of the policy] that will afford the most coverage." *Id.* *See also Zucker For BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017) ("So when a policy exclusion does swallow up an insuring provision, the Florida Courts conclude that the policy is ambiguous, and resolve that ambiguity by ignoring the exclusion.") (citations omitted).

A policy is illusory only if there is an internal contradiction that completely negates the coverage it expresses to provide. For example, in *Purrelli*, the policy purported to cover certain intentional torts, but excluded intended acts. 698 So. 2d at 619. This policy was illusory as it was effectively "complete nonsense." *Id.* at 620 (citation omitted); *see also Princeton Express v. DM Ventures USA LLC*, 209 F. Supp. 3d 1252, 1260 (S.D. Fla. 2016) (stating a policy was illusory where it stated it covered advertising injury and also stated advertising injury was excluded); *Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1318-19 (S.D. Fla. 2015) (finding policy illusory where it covered parasailing but excluded watercrafts).

On the other hand, where a limitation on coverage does not "completely swallow[] the insuring provision," the policy is not illusory. *See Auto-Owners Ins. Co. v. Christopher*, 749 So. 2d 581, 582 (Fla. 5th DCA 2000). For example, in *Interline Brands, Inc. v. Chartis Specialty Insurance Co.*, 749 F.3d 962 (11th Cir. 2014), the insured, a product distribution and marketing corporation, purchased a policy that covered advertising injury. However, the policy excluded advertising injury "arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government." *Id.* at 964. The insured was sued for sending junk faxes in violation of federal law and the insurer denied coverage. The Eleventh Circuit held the policy was not illusory because

> the Exclusion only excludes from coverage violations of a statute, ordinance, or regulation (i.e. not common law) and only in relation to "sending, transmitting or communicating of any material or information." While this is a significant Exclusion (especially in light of Interline's business), it does not render the policy absurd or completely contradict the insuring provisions.

5

*Id.* at 967; *see also Colony Ins. Co. v. Total Contracting & Roofing, Inc.*, No. 10-23091-CIV, 2011 WL 4962351, *5 (S.D. Fla. Oct. 18, 2011) (stating that for the policy in that case to be illusory it "would need to expressly cover damages from hazardous materials and simultaneously exclude damages arising from hazardous materials").

In the instant case, the policy's terms do not "completely contradict" one another like the terms in *Purrelli.* *See Purrelli,* 698 So. 2d at 619. Although the limitations on triggering the excess policy are "significant," these limitations do not "render the policy absurd or completely contradict the insuring provisions." *See Interline Brands, Inc.*, 749 F.3d at 967.

We recognize that Landmark will not, barring extraordinary circumstances, normally be liable for damages to the New Orleans hotel because significant distances separate it from the other insured properties and the policy excludes wind, water, and earth movement. Nevertheless, Landmark proposed at oral argument several examples for which it could be liable under the policy. For example, arson, riots, or any of the covered actions committed by a conspiracy could damage multiple properties and invoke coverage. Although such circumstances are unlikely, Warwick, a sophisticated business entity, paid a minimal premium for such minimal coverage. Warwick also purchased coverage for the New Orleans hotel as part of an umbrella insurance policy that insured and covered the four listed hotels. Warwick "chose to buy the policy that it bought. It cannot change that choice now . . . ." *See Zucker,* 856 F.3d at 1353.

In summary, we affirm the trial court's entry of summary judgment, and conclude the policy was unambiguous and was not illusory.

*Affirmed.*

CONNER, J., and SMALL, LISA, Associate Judge, concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***