[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14235
Non-Argument Calendar

_____

D.C. Docket No. 0:16-cv-61768-CMA

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiff - Counter Defendant- Appellee,

versus

SALT 'N BLUE LLC,
ROBERT WRANOVICS,

Defendants - Counter Claimants,

DOUGLAS BARKLEY,

Defendant - Counter Claimant - Appellant,

GLENN GROSSO, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 7, 2018)

Before WILSON, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Douglas Barkley appeals the district court's order granting summary judgment in favor of Travelers Property Casualty Company of America (Travelers) in this action regarding the scope of Travelers' duty to defend and indemnify Barkley and his assignee, certain underwriters at Lloyd's of London, Syndicate 4020, Ark Underwriting, Inc. (Lloyds). The district court concluded Travelers had no duty to defend or indemnify. After review, we affirm.[1]

## I. BACKGROUND

### A. The Facts[2]

This is a maritime insurance case. On July 30, 2014, Joseph Grosso and his brother Nicholas Grosso boarded the *M/V Scubatyme III* (the Vessel) for a lobster dive off the coast of Pompano Beach, Florida. Salt 'N Blue LLC owned the

---

[1] We review a grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in the non-moving party's favor. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). "[I]nterpretation of an insurance contract is also a matter of law subject to de novo review." *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997).

[2] This opinion concerns only the duty to defend because there is no duty to indemnify absent a duty to defend. *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995). Under Florida law, which the parties agree applies, an insurer's duty to defend depends solely on the allegations in the complaint filed against the insured. *Keen v. Fla. Sheriffs' Self-Ins.*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007). Therefore, the facts are taken from the complaint in the underlying wrongful death action and, for purposes of our analysis, presumed accurate. *See Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005).

2

Vessel, which was operated by Robert Wranovics, its captain, and Douglas Barkley, a mate and divemaster.

The Vessel proceeded to the intended dive site. After completing their dives, Joseph and Nicholas returned to the Vessel. Nicholas had exhausted his air supply, but Joseph wanted to re-enter the water to retrieve a lobster he had marked with a buoy. Although no one had checked the amount of air remaining in his tank, Joseph was allowed to re-enter the water without a dive buddy.

During Joseph's second dive, Wranovics steered the Vessel away to pick up other divers. When Wranovics returned to Joseph's location, Wranovics found Joseph unresponsive in approximately fifteen feet of water. Joseph's body was tangled in a line with a buoy attached to it—a line given to him by a crewmember on the Vessel. He had drowned.

*B.  The Procedural History*

Joseph's estate filed a wrongful death action (the Underlying Litigation) in the Seventeenth Judicial Circuit Court of Florida, alleging Salt 'N Blue, Wranovics, and Barkley breached the duty of care owed Joseph by, *inter alia*, allowing Joseph to re-enter the water without a dive buddy and leaving the dive site to collect other divers. Lloyds defended Barkley in the Underlying Litigation because Barkley is a named insured under a Lloyds-issued Professional Liability Insurance Master Policy (Lloyds' Policy).

3

On September 26, 2016, counsel for Barkley demanded that Travelers join in defending and indemnifying Barkley in the Underlying Litigation because Barkley is also a named insured under a Commercial Marine Insurance Policy (Travelers' Policy) issued by Travelers to Salt 'N Blue.  The Travelers' Policy obligates Travelers to "pay sums . . . a covered person under this policy become[s] legally obligated to pay as a result of the ownership, operation or maintenance of the insured vessel because of . . . bodily injury or loss of life."  Travelers agreed to defend Barkley, subject to a full reservation of rights.

The Underlying Litigation settled and the case was dismissed with prejudice on November 14, 2016.  Although it paid sums for Wranovics and Salt 'N Blue, Travelers allegedly refused to participate in funding the settlement of the claims against Barkley.  To protect its insured from exposure in excess of the Lloyds' Policy's limits, Lloyds paid the entire settlement demand.  Barkley assigned his right to recovery under the Travelers' Policy to Lloyds for valid consideration.

On July 22, 2016, while the Underlying Litigation was still pending, Travelers filed the instant suit against Salt 'N Blue, Wranovics, and Barkley, seeking a declaration that it was not obligated to defend Barkley.  Travelers relied, in part, on the Diveboat Limitation Endorsement included in the Travelers' Policy, which excludes "[b]odily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water" from coverage.  Barkley

4

filed a counterclaim seeking a declaration that Travelers was obligated to defend and indemnify Barkley.  The parties ultimately filed cross motions for summary judgment.  The district court entered summary judgment for Travelers, holding that it had no duty to defend or indemnify Barkley.  Barkley appealed.

## II.  ANALYSIS

This appeal concerns the duty to defend and the duty to indemnify.  The duty to defend is distinct from, and broader than, the duty to indemnify.  *Keen v. Fla. Sheriffs' Self-Ins.*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007).  We begin our analysis with the duty to defend because if Travelers had no duty to defend Barkley, it necessarily follows that Travelers had no duty to indemnify him.  *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 422 (Fla. 3d DCA 1995) ("Since [the insurer] had no duty to defend the insureds, correspondingly, there is no duty to indemnify them . . . .").

Under Florida law, an insurer's duty to defend depends solely on the allegations in the complaint filed against the insured.  *Keen*, 962 So. 2d at 1024.  Therefore, for purposes of our analysis, we look to the complaint filed in the Underlying Litigation (Underlying Complaint) and assume all facts contained therein are accurate.  *See Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005) ("Indeed, when the actual facts are inconsistent with the allegations in

5

the complaint, the allegations in the complaint control in determining the insurer's duty to defend." (quotation omitted)).[3]

There is no duty to defend only if there is no doubt that the allegations of the complaint do not fall within the policy's coverage. *Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993). "[T]he burden of demonstrating that the allegations of the complaint are cast solely and entirely within [a] policy exclusion" rests with the insurer. *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (quotation omitted). Correspondingly, "[a]ny doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 443.

But, before exploring the merits, we must address Barkley's argument that the district court erred by analyzing an exclusion before deciding whether Barkley fell within the general coverage grant. The general coverage grant obligates Travelers to "pay sums . . . a covered person under this policy become[s] legally obligated to pay as a result of the ownership, operation or maintenance of the insured vessel because of . . . bodily injury or loss of life." But the district court did not decide whether Joseph's death occurred "as a result of" the operation of the Vessel. Instead, the district court granted summary judgment for Travelers

---

[3] Barkley contends the district court erred by declining to limit its review to facts taken from the Underlying Complaint. We need not pass on Barkley's argument because, even taking the allegations in the Underlying Complaint as true, there is no duty to defend.

because, even assuming Jospeh's death occurred as a result of the operation of the Vessel, the facts alleged in the Underlying Complaint fall within the Diveboat Limitation Endorsement.

Barkley asserts the district court erred by failing to rule on "the threshold question of whether Barkley's liability falls within the main coverage grant of the policy." We disagree. In support, Barkley cites *Siegle v. Progressive Consumers Insurance Company*, 819 So. 2d 732 (Fla. 2002), for the proposition that ruling on the main coverage grant is a necessary predicate to considering potentially applicable exclusions. Barkley focuses on the following language from *Siegle*: "[T]he existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." 819 So. 2d at 740. But Barkley's argument takes that quotation out of context. In *Siegle*, the Florida Supreme Court rejected the argument that the absence of an exclusion for diminished value supported the conclusion that an insurance policy did, in fact, cover diminished value. *Id.* The Florida Supreme Court did not hold that courts are barred from assuming arguendo that a claim falls within the main coverage grant and proceeding to analyze potentially relevant exclusions.

Accordingly we turn, as the district court did, to the language of the exclusion. As Florida courts have repeated time and again, "insurance contracts

7

must be construed in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Id.* (alteration in original) (quotation omitted). "[E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). "But courts should not strain to find ambiguity." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1228 (11th Cir. 2005). "[I]f there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning." *Id.*

The Diveboat Limitation Endorsement excludes "[b]odily injury, loss of life, or illness of any person while in the water or arising as a consequence of being in the water" from coverage. The facts alleged in the Underlying Complaint show that Joseph drowned after re-entering the water to retrieve a lobster. His drowning death is a "loss of life" that occurred "while in the water." Barkley, however, urges this Court to bypass plain meaning because the Diveboat Limitation Endorsement is ambiguous.

Although Barkley asserts the Diveboat Limitation Endorsement, standing alone, "is susceptible to more than one reasonable interpretation," he does not

8

elaborate on this conclusory statement by, for example, pointing out other reasonable interpretations of the exclusion.  Therefore, Barkley has waived the argument that the exclusion is ambiguous when considered in isolation.  *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding waiver where the appellant "elaborate[d] no arguments on the merits as to this issue in its initial . . . brief").  And even if the argument were not waived, the standalone text of the Diveboat Limitation Endorsement is unambiguous: loss of life while in the water is not covered.

Alternatively, Barkley contends the Diveboat Limitation Endorsement is ambiguous when considered in context.  First, he emphasizes the Travelers' Policy is "patently ambiguous . . . in that [it] provides coverage for operational negligence of a vessel under its main coverage grant, and then takes away coverage where, as a direct consequence of the negligent operation of the vessel, a diver drowns 'in the water.'"  "However, simply because one provision gives a general grant of coverage and another provision limits this coverage does not mean there is an ambiguity."  *Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 799 (11th Cir. 2004).  On the contrary, "[t]his is the very nature of an insurance contract; exclusions in coverage are expressly intended to modify coverage clauses and to limit their scope."  *Id.*  Therefore, the Diveboat Limitation Endorsement is not

ambiguous because it limits the scope of the general coverage grant under the Travelers' Policy.

Second, Barkley cites the exclusion's "interact[ion] and conflict[] with several other endorsements" in the Travelers' Policy to show ambiguity. Despite his use of the plural "endorsements," Barkley cites only one in his opening brief: the Divemaster Limitation Endorsement. The Divemaster Limitation Endorsement covers sums an insured "becom[es] legally obligated to pay as a result of the ownership, operation or maintenance of the insured watercraft because of liability to a Certified Divemaster and/or Dive Instructor performing diving services on behalf of you from the insured watercraft." The Travelers' Policy further states that exclusion (k), which was replaced by the Diveboat Limitation Exclusion, "[is] deleted for the purpose of this endorsement only." Barkley does not explain what, exactly, is ambiguous about the Diveboat Limitation Endorsement's interaction with the Divemaster Limitation Endorsement. As noted above, this Court will not consider an argument unless the appellant elaborates on the merits. *See Greenbriar Ltd.*, 881 F.2d at 1573 n.6. And to the extent Barkley is attempting to incorporate arguments made in his briefing before the district court, he cannot. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) (rejecting the practice of incorporating by reference arguments made to district courts).

Again, even if the argument were not waived, it would be unavailing.  The Divemaster Limitation Endorsement provides that the Diveboat Limitation Endorsement is disregarded where "*liability to* a Certified Divemaster and/or Dive Instructor" is concerned.  Barkley acknowledges that the Divemaster Limitation Endorsement "does not apply to the facts presented in the Underlying Litigation." Liability to a certified divemaster or dive instructor is simply not at issue. However, Barkley nonetheless emphasizes that "Travelers relied upon this endorsement to try to bolster its position that no coverage exists."  The fact that Travelers quoted the Divemaster Limitation Endorsement in a letter recounting "many of the pertinent sections of the [Travelers'] Policy" does not demonstrate a conflict between the Divemaster Limitation Endorsement and the Diveboat Limitation Endorsement, particularly where the letter simultaneously "urge[d] [Barkley] to review the full Policy for a complete listing of all applicable terms, conditions, exclusions and endorsements."

Third, Barkley cites testimony by Travelers' underwriting representative, Travis Ochowicz.  Responding to hypotheticals, Ochowicz indicated the Travelers' Policy would cover passenger deaths in the water if those deaths were attributable to crewmember negligence.  This testimony, Barkley contends, demonstrates ambiguity.  We disagree.  "[I]nsurance contracts are interpreted according to the plain language of the policy except when a genuine inconsistency, uncertainty, or

11

ambiguity in meaning remains *after resort to the ordinary rules of construction*."

*Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 532 (Fla.

2005) (emphasis added) (quotation omitted).  Here, there is no ambiguity after

considering the ordinary rules of construction, and we decline to introduce any

through Ochowicz's testimony.

Finally, Barkley urges the Diveboat Limitation Endorsement is illusory.  Not

so.  Insurance coverage becomes illusory "[w]hen limitations or exclusions

completely contradict the insuring provisions."  *Warwick Corp. v. Turetsky*, 227

So. 3d 621, 625 (Fla. 4th DCA 2017) (quotation omitted).  The Diveboat

Limitation Endorsement excludes "[b]odily injury, loss of life, or illness of any

person while in the water or arising as a consequence of being in the water." As the

district court recognized, the Diveboat Limitation Endorsement would not apply to

bodily injury, loss of life, or illness occurring onboard the Vessel as a result of

negligence in the Vessel's operation.  Therefore, the Travelers' Policy does not

"grant a right in one paragraph and then retract the very same right in a later one."

*Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352

(11th Cir. 2017) (quotation omitted).  Instead, the Diveboat Limitation

Endorsement "excludes coverage for a subset of claims that would ordinarily fall

within the policy's insuring provisions."  *Id.*  The district court did not err by

concluding the Diveboat Limitation Endorsement does not render the Travelers'

Policy illusory.

## III.   CONCLUSION

The district court did not err.  Because Travelers had no duty to defend

Barkley in the Underlying Litigation, entering summary judgment for Travelers

was proper.

**AFFIRMED.**